BIGHAM BROTHERS v. PORT ARTHUR CHANNEL & DOCK COMPANY.

No. 1569.    Decided November 14, 1906.

**1.—Channel and Dock Company—Powers and Liabilities.**

A channel and dock company created under articles 721, 722, Revised Statutes, had two distinct powers, (1) to improve navigable waters, and (2) to exercise eminent domain on the mainland for construction of canals and docks for navigation; whether or not, in the exercise of the first power, it was exempt, as an agency of the State, from liability for damages to property thereby, in the exercise of the second it was subject to liability (Const., art. 1, sec. 17) to make compensation for damaging private property for public use.    (Pp. 200, 201.)

**2.—Riparian Owner—Irrigation—Pollution of Water.**

The right of a riparian owner to take water from the stream for irrigation is protected by the Constitution from impairment for public use without compensation, and includes the right to have the water preserved against the introduction of anything injurious to its quality for that purpose, such as salt sea water.    (P. 201.)

**3.—Same—Canal Introducing Sea Water to Fresh Stream.**

Taylor's Bayou, a fresh water stream emptying into Sabine Lake, also mainly fresh water, was connected by a canal cut through the main land by defendant, a channel and dock company, with the salt water of Sabine Pass, with the effect of making the waters of the bayou salt for twenty miles above, where plaintiff had an irrigated rice plantation, the crop upon which, and the power to irrigate successfully in the future, were destroyed by the salt water. Held, that the company was liable for the damages so occasioned, and it was error to sustain a general demurrer to plaintiff's petition seeking damages and injunction requiring the maintenance of locks against the inflow of salt water.    (Pp. 198–202.)

**4.—Demurrer.**

In order to avail himself of error in sustaining a general demurrer going to the merits of the cause of action alleged, plaintiff is not required to amend his petition to meet special demurrers to it which were also sustained; the ruling on general demurrer made such amendments useless.    (P. 202.)

Error to the Court of Civil Appeals for the First District, in an appeal from Johnson County.

Bigham Brothers sued the Port Arthur Channel and Dock Company, and appealed from a judgment in favor of defendant on demurrer. Upon affirmance they obtained writ of error.

*Duff & Duff, G. W. Glasscock, O'Brien, John & O'Brien, Hampton Gary* and *Smith, Crawford & Sonfield,* for plaintiffs in error.—The Court of Civil Appeals erred in holding that appellants' right, as riparian owners, to have Taylor's Bayou, a navigable stream, flow in quantity and quality as it was wont to flow, is subservient to the right of the State to improve navigation, so that the State would be without liability in damages to appellants for diminution of the value of their lands or the value of their perished crops, where such injuries are due alone to the destruction of the irrigable quality of the water in such navigable stream, destroying appellants' use of same for irrigation through the improvement of navigation.    Monongahela Nav. Co. v. United States, 148 U. S., 312; United States v. Lynah, 188 U. S., 445; Farnham, Waters, pp. 365, 373, 601; Lowndes v. United States, 105 Fed. Rep., 838.

The Court of Civil Appeals erred in holding that the right to subject riparian rights to the improvement of navigation is referable to, and is an exercise of, a paramount right in the State, which need not be attended with compensation and not referable to nor the exercise of the right of eminent domain, which requires compensation.    Same authorities.

The Court of Civil Appeals erred in holding that, while appellants, as riparian owners, hold their lands by title absolute, for the taking, damaging or destruction of which, by the State, for any purpose, they are entitled to compensation, that their right in the waters of the stream, which is property, is held by them subject to the paramount right of the State to improve the navigability of the stream, and that for the taking, damaging or destruction of such property rights for such purpose, appellants would not be entitled to compensation.    United States v. Lynah, 188 U. S., 445; Monongahela Nav. Co. v. United States, 148 U. S., 312; Farnham, Waters, pp. 368, 369, 601, 1910; Lowndes v. United States, 105 Fed. Rep., 838; Avery v. Fox, 1 Abb. U. S., 246, Fed. Cases, No. 674; Kaukauna Water Power Co. v. Green Bay & M. Canal Co., 142 U. S., 254; King v. United States, 59 Fed. Rep., 9; Notes, Denny v. Bridges, 40 L. R. A., 605; Williams v. United States, 104 Fed. Rep., 50 (affirmed 188 U. S., 484); Cooper v. Williams, 22 Am. Dec., 749; Lewis Eminent Domain (2d ed.), sec. 73; Cooley Const Lim. (7th ed.), 807.

The Court of Civil Appeals erred in holding that the State would not be liable in damages for the injuries complained of by appellants, and that the immunity of the State passed to appellee under the terms of the act under which appellee was incorporated.    Rev. Stats. of Texas, arts. 721-725; Selman v. Wolfe, 27 Texas, 68; Mud Creek Irrigation Co. v.

Vivian, 74 Texas, 173; Charles River Bridge Co. v. Warren Bridge, 11 Pet., 420; New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co. (N. J.), 1 L. R. A., 133; Mills Eminent Domain, sec. 182; Cooley Const. Lim. (7th ed.), 565, 762; 2 Am. & Eng. Enc. of Law, 26, p. 661, and authorities.

Because the Court of Civil Appeals erred in holding that, while the appellee was in no sense an agent of the State, yet it is an agency to whom the State has farmed its right to construct the canal, and granted in furtherance of it all the incidental property rights which it owned and would have used or invaded had the State undertaken the work, and that the immunity of the State passed to appellee. Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467; Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 169; Pumpelly v. Green Bay Canal Co., 13 Wall., 166; Ten Eyck v. Delaware & Raritan Canal Co., 18 N. J. L., 200, 37 Am. Dec., 233; Sage v. Mayor, 61 Am. St. Rep., 592, 154 N. Y., 61; Tinsman v. Belvidere Ry. Co., 26 N. J. L., 148, 69 Am. Dec., 565, 568; Sinnickson v. Johnson, 34 Am. Dec., 184; Western U. T. Co. v. State, 55 Texas, 314; Rundle v. Delaware & Raritan Canal Co., 1 Wall., Jr., 275, Fed. Cases, 12139; 1 Thompson Corp., sec. 27; 1 Clark & Marshall, Priv. Corp., pp. 66, 68, 69; 10 Cyc., foot note, p. 160.

The Court of Civil Appeals erred in holding that, while appellants, as riparian owners on Taylor's Bayou, had the right to the use of the waters of the stream in their natural condition, which is property, that appellee can take, damage or destroy such property without compensation to appellants. Same authorities as under third preceding proposition.

The Court of Civil Appeals erred in holding that the construction of appellee's canal, though not the direct object of the work, was yet an improvement of the navigability of Taylor's Bayou, and not the creation of an artificial watercourse. Avery v. Fox, 1 Abb. U. S., 246, Fed. Cases, No. 674; Cooley Const. Lim. (7th ed.), 807; Smith v. Rochester, 92 N. Y., 463, 44 Am. Rep., 393.

The Court of Civil Appeals erred in holding that appellee, having the right to construct and maintain its canal, could construct and maintain the same negligently, and without the use of reasonable means to protect appellants' riparian rights in the use of the waters of Taylor's Bayou, and for such negligent construction and maintenance appellants could not recover the damages proximately resulting therefrom, or an injunction restraining such negligent maintenance of appellee's canal. Sellman v. Wolf, 27 Texas, 68; 1 Farnham, Waters, p. 137; Hickok v. Hine, 13 Am. Rep., 255; Post v. Munn, 4 N. J. L., 61; Cobb v. Bennett, 75 Pa. St., 326, 15 Am. Rep., 752; People's Ice Co. v. Excelsior, 44 Mich., 229, 38 Am. Rep., 246; Connecticut River Co. v. Olcott Falls Co., 13 L. R. A., 826.

The Court of Civil Appeals erred in holding that appellee should not be required to put in and maintain a lock to prevent the entrance of salt water into Taylor's Bayou. City of Ennis v. Gilder, 74 S. W. Rep., 585; Sounders v. New York Cent. Ry. Co., 43 Am. St. Rep., 729, 738; Indianapolis Water Co. v. American Straw Co., 53 Fed. Rep., 970, 976;

Strobel v. Kerr Salt Co., 79 Am. St. Rep., 643, 654; Gould, Waters, secs. 544, 552, 553, 558.

The Court of Civil Appeals erred in holding that, because the construction and maintenance of a lock at Taylor's Bayou would impose an additional burden upon the shipping interests, and delay of shipping, that appellee should not be required to construct and maintain such lock to protect appellants' property rights in the use of the waters of Taylor's Bayou in their natural irrigable quality.   Same authorities.

The Court of Civil Appeals erred in holding that the construction and maintenance of such lock would be required only to meet the necessities of navigation, and not for the protection of appellants' property rights in the use of the waters of Taylor's Bayou in their natural condition. Same authorities.

*S. W. Moore* and *Greers, Nall & Neblett,* for defendants in error.— The trial court, being of the opinion that the petition was obnoxious to the special exceptions, did right in sustaining the special exceptions, and if the petition could have been cured by amendment, as against the special exceptions, it was the duty of the appellant to so amend, thereby leaving only one question to be passed on by the trial court, towit, the sufficiency of the petition on general demurrer.   Canales v. Perez, 65 Texas, 293; Marshall v. Atascosa County, 47 S. W. Rep., 680; Hansen v. Yturria, 48 S. W. Rep., 795; Jackson v. Cassidy, 68 Texas, 282.

The District Court did not err in sustaining the general demurrer to plaintiff's petition, because it appeared from the petition that defendant is a corporation chartered under articles 721-725, inclusive, Revised Statutes, and therefore for the purpose of improving the navigable waters of this State, and for constructing canals and docks in the aid of navigation, and therein that it is an agent of the government; that the damage suffered by the plaintiffs was consequential and incident to its work of improving the navigable waters of the State, and therefore such damage is damnum absque injuria.   Rev. Stats. 1895, arts. 721, 722, 723, 724, 725; Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 162; Crary v. Port Arthur Canal Co., 92 Texas, 280; Armendiaz v. Stillman, 67 Texas, 464; 21 Ency. Law (2d ed.), 435, 436; 24 Ency. Law (2d ed.), 981; Gibson v. United States, 166 U. S. 269; Black River, etc., Co. v. LaCross, etc., Co., 54 Wis., 659, 41 Am. Rep., 66; Richardson v. United States, 100 Fed. Rep., 714; Cooley's Const. Lim. (6th ed.), 666; Monongahela Nav. Co. v. Coons, 6 Watts & Serg., 101; Pennsylvania Co. v. Marchant, 119 Pa. St., 541; Scranton v. Wheeler, 179 U. S., 141; Eldridge v. Trezevant, 160 U. S., 452; Transportation Co. v. Chicago, 99 U. S., 635; Mills v. United States, 46 Fed. Rep., 738; Hollister v. Union Co., 9 Conn., 436, 25 Am. Dec., 36; Cohn v. Wausau & Co., 47 Wis., 314; Brooks v. Cedar & Co., 82 Maine, 17, 19 Atl. Rep., 87; McKee v. Delaware Canal Co., 49 Pa. St., 424; Fitchburg R. R. v. Boston & M. Ry., 3 Cush., 58; Peel v. Atlanta (Ga.), 8 L. R. A., 787; Sage v. New York, 154 N. Y., 61, 61 Am. St. Rep., 592; Barney v. Keokuk, 94 U. S., 324; Keator Lumber Co. v. St. Croix & Co., 72 Wis., 82; Hawkins Point Lighthouse, 39 Fed. Rep., 77; Lansing v. Smith, 8 Cowan (N. Y.), 146; Homochitto River

Commissioners v. Withers, 29 Miss., 21, 64 Am. Dec., 126; Stevens v. Patterson & Newark Ry. Co., 34 N. J. L., 532; Friend v. United States, 30 Court of Claims Rep., 94; Scranton v. Wheeler, 113 Mich., 565; Slingerland v. International Contracting Co., 60 N. Y. Sup., 12; Bedford v. United States, 192 U. S., 217; Water Power Co. v. Water Comrs., 168 U. S., 372; Stevens Point Boom Co. v. Reilly, 46 Wis., 237; Ravenwood v. Flemings, 22 West Va., 52, 46 Am. Rep., 485; McManus v. Carmichael, 3 Iowa, 1; People v. Kirk, 162 Ill., 138, 53 Am. St. Rep., 277; Illinois Cent. Ry. Co. v. State of Illinois, 146 U. S., 387.

Where the Government or State authorizes a private corporation to do an act which causes consequential damages to an individual, such corporation would not be liable for doing the same act; the immunity of the State from such claim for damages to such corporation by the charter. Black River Imp. Co. v. LaCrosse, etc., Co., 54 Wis., 659, 41 Am. Rep., 66; Cohn v. Wausau Boom Co., 47 Wis., 325; Wisconsin River Imp. Co. v. Manson, 43 Wis., 255; Indiana Central Ry. Co. v. State, 3 Ind., 421; Pennsylvania Ry. Co. v. New York & L. B. Ry. Co., 8 C. E. Green, 157; Davis v. East Tennessee & Ga. Ry. Co., 1 Sneed, 94; United States v. Railway Bridge Co., 6 McLean, 517; Susquehanna Canal Co. v. Wright, 9 Watts & Sargent, 9, 42 Am. Dec., 312; Texas Cent. Ry. Co. v. Bowman, 79 S. W. Rep., 295.

That it was within the power of the State to improve its navigable waters, and authorize the construction of canals, and that such exercise of power does not conflict with the Federal Constitution, is not now an open question. Morris & Cummings v. State, 62 Texas, 739; Pomeroy Packet Co. v. Catlettsburg, 105 U. S., 559.

The trial court committed no error in sustaining the general demurrer to the petition, because it appeared from the petition that the real gist of plaintiffs' complaint is that by constructing the canal it has prevented fresh water from flowing out of Sabine Lake, up stream, up Taylor's Bayou twenty miles; that Taylor's Bayou, without the flow of water from Sabine Lake (an arm of the sea) does not afford sufficient water to irrigate rice crops; that plaintiffs have no right to the waters of Sabine Lake, they not being riparian owners with respect thereto, their land being twenty miles distant from the shore of said lake. That the appellants, not being riparian owners with respect to Sabine Lake, they have no rights to the use of said waters. Gould on Waters (3d ed.), sec. 148; Long on Irrigation, sec. 14, p. 26; Stark v. Miller, 113 Mich. 465; Boehmer v. Big Rock Irrig. Dist., 117 California, 19; Swearengen v. St. Louis, 151 Mo., 348. That the plaintiffs have no right which has been invaded by defendant, and therefore have no cause of action. Flaxman v. Rice, 65 Texas, 430; Sabine & E. T. Ry. Co. v. Johnson, 65 Texas, 389; Denison & S. Ry. Co. v. Denison Land Co., 32 S. W. Rep., 334; Buckham v. Burney, 42 S. W. Rep., 1041; Fulmer v. Williams, 122 Pa. St., 191; Henry v. City of Newburyport, 149 Mass., 582; Organ v. Memphis, etc., Ry. Co., 51 Ark., 11 S. W. Rep., 103.

The general demurrer was rightfully sustained by the trial court because the damages sought to be recovered are too remote—are not the proximate result of a breach of duty on the part of appellee, nor were they in the reasonable contemplation of appellee at the time the acts

complained of were committed, and are therefore too remote to be recovered. 1 Sherman & Redfield on the Law of Neg., sec. 25; Morrison v. Brown, 111 N. Y., 318, 7 Am. St. Rep., 751; Galveston, H. & S. A. Ry. Co. v. Ryon, 70 Texas, 58; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 274; Texas & P. Ry. Co. v. Bingham, 90 Texas, 223; Denison v. Barry, 83 S. W. Rep., 5; Neely v. Railway Co., 96 Texas, 274; Lipscomb v. Railway Co., 95 Texas, 5.

The demurrer was rightly sustained by the trial court because it appears that, insofar as the petition prays for a mandatory injunction requiring defendant to put in a lock, this relief, if granted, would require defendant to violate the laws of the United States by obstructing a navigable water, and no duty is shown in defendant to protect plaintiffs' land.

That the mandatory injunction prayed for, requiring defendant to put in a lock, would not be granted, because this would require the defendant to violate the penal laws of the United States. (Act of March 3, 1899; 3 U. S. Comp. Stat., pp. 35-41; 30 States at Large, chap. 425, sec. 9, p. 1151.) As to what are navigable waters of the United States, see the Daniel Ball, 10 Wall., 557; 19 Lawyers' Ed., 999; United States v. Burlington, etc., Ferry Co., 21 Fed. Rep., 332; the Montello, 20 Wall., 439; Escanaba Co. v. Chicago, 107 U. S., 682; Ex parte Boyer, 109 U. S., 631; Mallory v. Milwaukee, 1 Fed. Rep., 613. (See extensive note on this subject in 42 L. R. A., sub. 14, p. 325.)

The trial court did not err in sustaining the general demurrer because the petition shows that Sabine Pass, Sabine Lake and Taylor's Bayou are all navigable waters; that defendant, in constructing its canal, connected navigable waters and improved the same, to-wit, Taylor's Bayou and Sabine Pass; whereby it appears that the only damage done to plaintiffs was done in improving the navigable waterways of the State: and, since all rights of riparian owners are held subject to the right of the State or government to improve the waterway in aid of navigation, the plaintiffs can not recover. Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155; 1 Sherman & Redfield on Neg., secs. 5, 10; Lewis on Eminent Domain, sec. 71; Beckham v. Burney, 42 S. W. Rep., 1041; Flaxman v. Rice, 65 Texas, 430.

The provision of the Constitution requiring compensation to be made for private property taken, damaged or destroyed, for public use, does not give any right to an individual to recover damages for an act which he did not have prior to the enactment of this provision. Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 162.

The fact that the Act under which the appellees incorporated confers upon it the right of eminent domain, and grants to it the right to use designated classes of property belonging to the State, does not thereby require such corporations to make compensation to individuals for other kinds of property which do not belong to them, or to which they have only a qualified title, subject to be lost by action of the State in improving the navigability of the waters. Black River Imp. Co. v. LaCross, 54 Wis., 659; Cohn v. Wausau Boom Co., 47 Wis., 325; Susquehanna Canal

Co. v. Wright, 9 Watts and Serg. (Pa.), 9; Texas Cent. Ry. Co. v. Boone, 79 S. W. Rep., 295; Texas & Sabine R. R. Co. v. Meadows, 73 Texas, 36.

Whatever act tends to facilitate the safe navigation of a waterway, and to render the same practicable, so that such waterways can be used with safety by vessels, is an improvement of, and in aid of, navigation. Scranton v. Wheeler, 179 U. S., 141; Hawkins Point Lighthouse, 39 Fed. Rep., 77; Homochitto River Comrs. v. Withers, 29 Miss., 21, 64 Am. Dec., 126; Sage v. New York, 154 N. Y., 61; Lorman v. Benson, 8 Mich., 18; Cohn v. Wausau Boom Co., 47 Wis., 325.

Where a petition states an impossible state of facts, or a state of facts which it is evident are not true, and the recovery of damages depends on the state of facts being true, the general demurrer to the petition should be sustained. Southwestern Ry. Co. v. Covenice, 40 L. R. A., 253; 12 Am. & Eng. Enc. of Law, p. 196; Minnesota v. Barber, 136 U. S., 321; King v. Gallon, 109 U. S., 99.

BROWN, Associate Justice.—We adopt the following statement of the contents of the petition made by the Court of Civil Appeals in its opinion:

"It was alleged in substance that in 1902 the plaintiffs were the owners of certain lands fronting on Taylor's Bayou, in Jefferson County, Texas. That the Bayou is a fresh-water navigable stream, wholly within the State, emptying into Sabine Lake, which, though directly connected with the Gulf of Mexico, is generally fresh by reason of the flow of the Nechez and Sabine Rivers in and through it. That this land is especially suited to the growing of rice, and is of small value for any other purpose. That a rice crop can not be successfully raised except by irrigation, and at certain stages of its growth it requires a large quantity of fresh water. That they planted a rice crop in 1902, and proceeded to irrigate it from Taylor's Bayou, their only water supply, but that the water of the bayou, which had theretofore been fresh and sweet, had been polluted by the acts of defendant, as hereinafter set out, so that their rice crop withered and died, to their damage of $20,000. The water was lifted from the stream to the rice lands by means of pumps, and did not flow upon the lands otherwise. The pollution of the water is alleged to have occurred in the following manner:

"It is averred that the defendant is a corporation duly incorporated under articles 721, 722, 723 and 725 of the Revised Statutes of this State. That on the 7th of January, 1902, it purchased from its predecessor the canal known as the Port Arthur Canal and Dock Company's canal. That this canal was, in 1899, dug from a point on Sabine Pass, along the west margin of the pass and Sabine Lake, through the main land, to Taylor's bayou, intersecting the bayou at a point about two thousand feet west of its mouth. That the canal is a narrow channel, having a depth of from twenty to thirty feet. That Sabine Lake is an arm or inlet of the sea, being connected with the Gulf of Mexico by Sabine Pass. That Sabine Lake is shallow and generally fresh by reason of the inflow of the Nechez and Sabine Rivers, and before the construction of the canal the incoming tide instead of rendering the lake

and bayou salt would merely raise the level of the fresh water in the lake and cause it to flow up Taylor's Bayou. That by reason of the construction of the canal the salt water of the sea is at times. carried by the tides directly into the bayou, rendering it salty and unfit for irrigation purposes for over twenty miles from its mouth. That plaintiff's land is situated twenty miles from its mouth.

"In order to avoid the necessity of a more minute description, we here insert a map taken from the appellee's brief, which seems to be a fair representation of the situation as alleged in the petition:

"The plaintiffs, asserting the right to irrigate from the bayou, and denying the right of defendants to pollute the waters of the bayou for any reason, insist that defendant is liable to them for the damage alleged. They further claim that the canal, as it is now, is negligently constructed and maintained in this: that, at a comparatively small cost, towit, $6,000 to $12,000, the canal company could construct and maintain a lock and dam in its canal, which, when opened for the purpose, would allow the ingress and egress of shipping, and when closed would

prevent the inflow of salt water, and thus the stream would remain fresh. For this reason, and because the recurring pollution of the water will vastly reduce the value of their lands and practically destroy them for the purpose of rice farming, they ask for a mandatory injunction requiring defendant to put in such a lock and dam as will put an end to the pollution complained of. Nothing was asked in the way of damages except the value of crop lost in 1902. The suit was filed September 2, 1903. The canal is alleged to have been constructed in 1899, and it is further averred that it was at all times apparent that the construction and maintenance of the canal would, at times, and under varying natural conditions, cause the pollution of the water of the bayou."

These extracts contain the parts of the Revised Statutes material to a decision of the questions involved in this case:

"Art. 721. This title shall embrace and include the creation of private corporations for the purpose of constructing, owning and operating deep-water channels from the waters of the Gulf of Mexico along and across any of the bays on the coast of this State to the mainland, for the purposes of navigation and transportation, and for the construction, owning and operating docks on the coast of this State for the protection and accommodation of ships, boats, and all kinds of vessels for navigation, and their cargoes.

"Art. 722. Every such channel corporation shall, in addition to the powers herein conferred, have power

"3. To construct its channel across, along, through or upon any of the waters of the bays within the jurisdiction of this State, and so far into the mainland as may be necessary to reach a place for its docks that will afford security from cyclones, storms, swells and tidal waves, with such depth as may suit its convenience and the wants of navigation, not less than five feet, and a width of not less than forty feet."

"5. . . . ; provided, that damages for the property appropriated by such corporation shall be assessed and paid for as is provided for in case of railroads.

"6. To enter upon and condemn and appropriate any lands of any person or corporation that may be necessary for the uses and purposes of such channel corporation," etc.

The primary object of the State, in permitting the creation of such corporations as defendant in error, was the construction and operation of deep-water channels from the waters of the Gulf of Mexico through the shallow waters along the coast 'for the purpose of navigation." The secondary and auxiliary purpose was to construct "docks" for the protection of vessels from storms, and, to meet the want of natural harbors and protection along the coast, the channel might be extended into the land to a safe place for the docks, as a retreat from the severe storms which frequent the coast of the State.

The State had, and conferred upon defendant in error, two classes of power, each applicable to different parts of this work. 1. The sovereign power to improve navigable waters within the State. 2. The right of eminent domain in the lands upon the shore and inland, with the power to condemn it for public use. In constructing the channel from the waters of the gulf to the point in Sabine Pass, where it reached the shore, the corporation exercised the power to "improve the navigable waters,"

but, when the mainland was reached, the authority to "improve navigable waters" ceased, because that power was not applicable to the work to be done in extending the channel into the mainland, and was by the law expressly applicable to "any bays along the coast." The doctrine of eminent domain, with power to condemn, was alone suited to the acquisition of the right of way over the land necessary to accomplish the work of building the land canal and inland harbor. The power to condemn land was expressly given for that purpose.

By the terms of the statute the defendant corporation was authorized to select some point inland as a place of refuge for boats and vessels of different kinds in time of storms, and, under the exercise of the power of condemnation, to acquire the right of way to such point, and all land that might be necessary for the purpose of constructing its docks and other necessary things to constitute a harbor. The canal from Sabine Pass to Taylor's Bayou was made by the exercise of the right of eminent domain and the power to condemn. Laying aside, then, all question of the power of the State, or what would be the liability of the corporation for damages arising out of the exercise of the power "to improve navigation," we must determine what is the liability of the defendant under the allegations of the petition for the damage done by the use of authority to condemn land and the authority to construct a land canal, whereby it conveyed the salt water into Taylor's Bayou, from which the injury resulted.

The following clause of article 1, section 17, of the Constitution of this State, prescribes the rule by which the rights and liabilities of the parties to this suit must be determined: "No person's property shall be taken, damaged or destroyed for, or applied to public use without adequate compensation being made, unless by the consent of such person."

The right of a riparian owner to take water from the stream is property, and comes within the protection of the Constitution as above quoted. (1 Farn. on Waters, sec. 462; Mud Creek Irrigation Co. v. Vivian, 74 Texas, 174.) In the case last cited, construing a clause of the statute under which the Irrigation Company was incorporated, giving to such companies free use of water, under which it claimed the exclusive right to the water, the court, speaking through Justice Gaines, said: "Besides, we are of the opinion that the provision could be held only to apply to streams upon the public lands of the State, since the Legislature had no power to take away or impair the vested rights of riparian owners without providing for the payment of just compensation."

The plaintiffs, as riparian owners, had the right to take from the bayou water with which to irrigate their rice farm, and in that right was also included the right to have that water in its natural condition, at least, that nothing should be introduced into it which would be injurious to its quality for irrigation purposes. (Farn. on Waters, secs. 515, 518a; Merrifield v. Lombard, 13 Allen, 16.) This proposition is not contested by counsel for defendants as we understand their argument, and we think it unnecessary to multiply authorities in support of it.

The cutting of the canal through the land being the cause of the

injury complained of, the liability must be such as is by law fixed for like injuries, which is, that he who causes damage to riparian rights is liable as if it were any other class of property. (2 Farn. on Waters, sec. 564; Galveston, H. & W. Ry. Co. v. Hall, 78 Texas, 173; Texas & S. Ry. Co. v. Meadows, 73 Texas, 32.)

If the canal had been cut from Sabine Pass across the mainland to a point on the bayou above plaintiffs' land, and the salt water discharged into the bayou at that point, and, by the law of gravitation, it had flowed down the bayou, mixing with the natural waters of the stream, thereby polluting the stream so as to render it unfit for irrigating purposes, there could be no question that the cutting of the canal and the introduction of the salt water were the cause of the injury to the plaintiffs' rights. In what respect can there be a difference from the fact that the canal was cut so as to introduce the water below the plaintiffs' farm, and, by the action of the laws of nature, was, by the rising of the tide in Sabine Lake, driven upwards to and beyond the plaintiffs' land, thereby polluting the water with the salt.

Granting, for the sake of argument, that the State might have authorized the defendant to improve the navigation of Taylor's Bayou and that for doing the work under that authority defendant could not have been made liable for damages, the fact that the navigation was improved, if it be a fact, is no answer to plaintiff's claim, because it was wholly unauthorized by the State. Certainly a private corporation, or individual, can not, without authority of law, improve the navigation of a stream to the ruin of the agricultural interests of the riparian owners, and, in answer to a suit for damages, set up the State's immunity as a bar to a claim for reparation.

Counsel for defendant in error insists that, although the court may have erred in sustaining the general demurrer, yet the judgment should not be reversed for that reason because some of the special exceptions were properly sustained and the plaintiffs did not amend their petition. The correct rule of practice is thus stated by Chief Justice Willie in the case of Everett v. Henry, 67 Texas, 405: "We think the petition showed a good cause of action against Henry, and that his general demurrer should not have been sustained. This renders it unimportant whether the special exceptions of the same defendant should have been sustained or overruled. If they were well taken, it would not have served any good purpose to amend the petition to meet the objections raised; for the court, having held the petition bad on general demurrer, would necessarily have dismissed it though every special demurrer had been met and its force destroyed by a proper amendment." That learned chief justice stated the same proposition even more tersely and forcibly in these words in Porter v. Burkett, 65 Texas, 383: "What does it avail a plaintiff to fortify his petition against a special exception, when the court, in effect, holds that if he does so it is still bad on general demurrer? There can be no use in amending a petition in one particular, when, after amendment, it shows upon its face no cause of action."

The judgments of the District Court and of the Court of Civil Appeals are reversed and this cause is remanded to the District Court for further proceeding.                    *Reversed and remanded.*