## BLUM v. KUSENBERGER.

(Court of Civil Appeals of Texas. San Antonio. June 11, 1913.)

1. PLEADING (§ 34*)—PETITION—GENERAL DEMURRER.

The court on testing a petition attacked by general demurrer must indulge in support of the petition every reasonable intendment, and the mere fact that special exceptions are sustained does not change the rule.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 5½, 66–74; Dec. Dig. § 34.*]

2. PLEADING (§ 218*) — PETITION — GENERAL AND SPECIAL DEMURRERS—RULINGS.

Where the court decides that a petition states no cause of action, it is unnecessary to consider the petition with reference to special demurrers.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 549–566; Dec. Dig. § 218.*]

3. LIBEL AND SLANDER (§ 16*) — LIBELOUS PUBLICATION—"LIBEL."

A newspaper article, which refers to a signed communication in a former issue relating to the condition of a highway, and which refers to the county judge of the county as a "Czar," and which states that the newspaper will not submit to the tyranny and bulldozing methods of a self-constituted "Czar" without raising an objection, and that it could cite other instances equally unjust, and that the public has a right to demand courteous treatment from its public servants, is libelous within Rev. Civ. St. art. 5595, defining a "libel" as a defamation in printing or writing tending to injure the reputation of one and thereby exposing him to public hatred or ridicule.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 5, pp. 4116–4125.]

Appeal from District Court, Gillespie County; Clarence Martin, Judge.

Action by Max Blum against H. W. Kusenberger. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

A. W. Moursund, of Fredericksburg, for appellant.

FLY, C. J. Appellant, who is the county judge of Gillespie county, sued appellee for damages alleged to have accrued from the publication of the following article in the Fredericksburg Standard, a newspaper published in Fredericksburg, in Gillespie county, state of Texas:

"Ignorance or Arrogance.

"It is generally understood by the reading public when an article appears in print with the author's name signed to it, that the responsibility of the publisher, then and there ceases. A newspaper is nothing more or less than what the general opinion of its patrons make it, and is a medium by which the news is disseminated among such readers and the public generally.

"In our last issue an article appeared signed by Mr. Thomas J. Martin, concerning the condition of the road at the point where an automobile accident occurred a week previous. In order to make our position perfectly clear, we will state that we do not know anything particularly about the condition of the road at the place in question, and furthermore, we are in no way responsible for the article published over Mr. Martin's signature.

"Notwithstanding the facts above stated, which are unquestionably understood as true by the public, generally, this office was called up by 'phone on Monday of this week by Max Blum, who proceeded, without cause or provocation, to deliver a message over the wire to the proprietor, that would not look well in print and would sound still worse in plain English. Threats of personal violence were freely made by Czar Blum, and the proprietor of the Standard was given warning that his presence would not be tolerated around the official throne of the County Czar, under the penalty of having his countenance treated to a massage by the mighty hand of the Czar. Whether these threats were made through ignorance or arrogance, we are unable to say. Nor do we know the reason why they were made, much less, little do we care.

"For the past several years, the Standard has stood openly for the building of good roads, and for every other advancement that would benefit the citizens of Gillespie county, and never before have we been called upon to criticise the action of any officer, publicly or privately. We, as other citizens of the county, have contributed our share of revenue in taxes towards the retaining in office for the past eight years, this man who now threatens with violence the citizen who does not quiver with fear at the bidding of his command, right or wrong.

"It is unnecessary for us at this time to further discuss this unpleasant occurrence. In giving the above facts, we simply wish to make the position of this paper clear. We do not in any way mean to cast a reflection upon any other member of the commissioners' court and we state here, that in our opinion the county's affairs will continue to be administered in the best interest of the public. But we cannot, as a private citizen, submit to the tyranny and 'bulldozing' methods of a self-constituted Czar without raising an objection.

"We could cite other instances that are equally as unjust, but we do not deem it necessary at this time. The public has a

---

right to demand courteous treatment from its public servants, and never before in the history of this county has it become necessary for an officer, that was elected by the honest, conscientious citizens of Gillespie county, to assume the role of a 'bully' or a ruler. How long will the people submit to these tyrannical methods?"

[1, 2] In testing a pleading attacked by general demurrer every reasonable intendment must be indulged in support of it. The fact that the special exceptions were sustained also does not give the case a different status than if the general demurrer alone had been sustained. It was utterly unnecessary to consider the petition with reference to special demurrers, when the court had already held that no cause of action was stated. Everett v. Henry, 67 Tex. 405, 3 S. W. 566; Bigham v. Port Arthur Channel Co., 100 Tex. 192, 97 S. W. 686, 13 L. R. A. (N. S.) 656.

[3] The statute in this state thus defines "libel": "A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury." Article 5595, R. S. 1911.

The law of libel, as expressed in the quoted statute, must govern in this state, and under that law the petition shows that the publication complained of tended to injure the reputation of appellant by exposing him to contempt and ridicule. Walker v. Light Pub. Co., 30 Tex. Civ. App. 165, 70 S. W. 555; Morrison v. Dean, 104 S. W. 505. As said in Culmer v. Canby, 101 Fed. 195, 41 C. C. A. 302: "Before a demurrer can be sustained to a petition counting on an alleged libelous publication, it must appear that the publication is not reasonably capable of a defamatory meaning, and cannot reasonably be understood in a defamatory sense. If an inspection of the publication convinces the court that no such reasonable construction of the language used could give to it a defamatory sense and meaning, a demurrer should be sustained; otherwise, its meaning and interpretation must be left to the jury, under proper instructions as to what constitutes libel."

Clearly, if the case of Guisti v. Galveston Tribune (Sup.) 150 S. W. 874, properly construes the statute on the subject of libel, the court erred in sustaining the general demurrer.

The judgment is reversed, and the cause remanded.