# MAY 1921

RAILROAD COMMISSION OF TEXAS v. RIO GRANDE & EAGLE PASS RAILWAY COMPANY.

No. 2811.     Decided May 4, 1921.

(230 S. W., 974.)

1.—Railroad Commission—Through Rate—Division Between Carriers.

The Railroad Commission of Texas has power, by Article 6654, Sections 5 & 6, Revised Statutes, to establish reasonable joint rates for shipments of freight over connecting lines and fix the *pro rata* part of such charges to be received by each for such transportation.  (P. 184).

**2.—Same.—Line Carrying Its Own Property.**

The fact that the property transported over connecting lines was coal purchased by the terminal carrier at a point on the line of the initial one, and·that its transportation over its own part of the line was of its own property and for its own use, did not prevent the Railroad Commission from exercising its power to fix a joint through rate for such shipment and to prescribe for the division of such charges the same *pro rata* as in case of commercial shipments by others. 36 I. C. C., 1; 20 I. C. C., 420; United States and I. C. C. v. Butler County R. R. Co., 234 U. S., 229; United States v. Baltimore & O. R. R. Co., 225 U. S., 326. (Pp. 181-185).

**3.—Same—Reasonableness of Division.**

The *pro rata* division between the connecting carriers being prescribed for and applicable only to shipments actually transported from the initial to the terminal point to which the through joint rate applied, it was not to be held unreasonable or unjust because the terminal carrier, transporting its own coal for its own use, by false billing or by stoppage of the shipment at points short of through carriage, had, on other similar shipments, sought to collect its *pro rata* of the through rate without performing the full through transportation. Such abuse of its orders the Railroad Commission, on proper showing, would have power to correct. (Pp. 184, 185).

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The Rio Grande & E. P. Ry. Co. sued for injunction to restrain the enforcement of an order of the Texas Railroad Commission fixing a division of the through rate prescribed for shipments of coal from Minera, on its own line, to Pescadito, on the line of the Texas-Mexican Ry. Co., as applied to coal purchased and, transported by the latter company for its own use. Plaintiff appealed from an adverse judgment by the District Court, and secured a reversal and rendition of judgment in its favor (175 S. W., 116) upon which appellee, the Railroad Commission, obtained writ of error.

*B. F. Looney,* Attorney-General, *C. M. Cureton,* Attorney-General, *Luther Nickels* and *Wallace Hawkins,* Assistants, for plaintiff in error:

The Railroad Commission of Texas had lawful power to deal with the subject matter of the order in question and to make the order. Article 6654, Subdivisions 5 and 6; 6552 and 6670, R. S., 1911; New York, & H Railroad v. Interstate Commerce Com. 200 U. S., 361.

The Railroad Commission of Texas has lawful power and authority to issue an order authorizing a connecting carrier as shipper of proprietary traffic to participate in the division of a joint or through rate where there has arisen a dispute and disagreement as to the division of said through rate. O'Keefe, Receiver, etc. v. United States, 240 U. S., 301; United States v. Baltimore & O. R. Co., 225 U. S., 345; United States v. Butler R. Co., 234 U. S., 28.

*A. Winslow* and *N. A. Rector,* for defendant in error.

Said order of the Railroad Commission, complained of, was illegal, unreasonable and unjust to appellant in that it permitted the Texas-Mexican Railway Company by means of through billing to charge and receive freights for hauling its own property over its own road from Laredo to Pescadito, and thereby deprive appellant of its right to collect the local freight rate of 65 cents from Minera to Laredo, at which point the Texas-Mexican Railway Company received its own coal from appellant on appellant's interchange tracks.

The order of the Railroad Commission, complained of, was illegal, unreasonable and unjust to appellant in this, that under the guise of apportioning freight rates it permitted the Texas-Mexican Railway Company to absorb 36.7 cents per ton on a through shipment from Minera to Pescadito, which resulted in reducing appellant's local rate from Minera to Laredo from 65 cents to 43.3 cents per ton, while in truth the said Texas-Mexican Railway Company was not charging itself any freight.

Said order in hearing No. 1427 was illegal, unreasonable and unjust to appellant because under its operation the Texas-Mexican Railway Company was enabled to stop its own coal in Laredo, where it used a portion of it and sold a portion of it, without paying the same rate of freight that other purchasers and users of coal in Laredo had to pay, but on the contrary paying 21.7 cents per ton less than other purchasers of said coal had to pay, and thus enjoy a rebate of freight charges in violation of law. Rev. Stats., Arts. 6670, 6671.

The proof conclusively showing that the order complained of was a special order made for the sole benefit of the Texas-Mexican Railway Company on a complaint filed by it before the Commission, affecting coal only, and the proof further showing conclusively that the Railroad Commission permitted said railway company to select Pescadito as the point for consignments of its coal; and the proof further showing, without dispute, that Pescadito is a mere point in the wilderness where no coal could be stored, or used, said order, fixing the division of freight rates mentioned in the former assignments, was arbitrary, unjust and unreasonable to appellant, and could only result in unlawful discrimination. Rev. Stats., Arts. 6670, 6671

Whenever the Texas-Mexican Railway Company received from appellant at Laredo, on its interchange tracks, its own coal wherever consigned, appellant's duty regarding said shipment was ended, and said coal was at home in the hands of its owner, the Texas-Mexican Railway Company, and was subject to whatever disposition it might wish to make of it, either to stop it at Laredo or move it to other points as the exigency of its business required; and the order of the Railroad Commission, allowing the Texas-Mexican Railway Company to manipulate the shipment of its own property to a point for the purpose of reducing its freight rates from Minera to Laredo, was illegal, un-

reasonable and unjust to appellant, and should, by the order of the court, be vacated and set aside.

MR. JUSTICE PIERSON delivered the opinion of the court.

Defendant in error, The Rio Grande & Eagle Pass Railway Company, owns and operates a line of railway from Minera to Laredo, where it connects with the line of the Texas-Mexican Railway Company, running eastward through Pescadito to Corpus Christi. Defendant in error's line also connects at Laredo with the International & Great Northern Railway Company. Prior to the transactions out of which this suit arose, the Railroad Commission of Texas had established a joint through rate of 80 cents per ton on coal from Minera to Pescadito moving over the lines of defendant in error and the Texas-Mexican Railway Company. The local rates on the same commodity for the two roads were, for defendant in error, from Minera to Laredo 65 cents per ton, and for the Texas-Mexican Railway Company from Laredo to Pescadito 55 cents per ton. The Texas-Mexican Railway Company was the purchaser of coal at the mines at Minera on defendant in error's line, and billed and shipped same over defendant in error's line and its own via Laredo to Pescadito. The two roads had no agreement as to the division of the through rate, and the controversy arose between them as to the division thereof. In order to determine the controversy the Texas-Mexican Railway Company submitted the matter of the proper division of said rate to the Railroad Commission of Texas for its decision, and in its application to that body set out eight certain carload shipments of coal which were shipped on through bills of lading from Minera to Pescadito and that afterwards said shipments were distributed by it to certain ponts on its line; and after setting out in detail the facts relating thereto, it concluded its application to the Commission in the following language.

"The Texas-Mexican Railway Company desires a ruling from Your Honorable Body whether it is entitled to a division of the through rate upon *company coal* shipped from Minera, Texas, and which coal actually moves to Pescadito, Texas, and we would be pleased to have this ruling cover all shipments of company coal moving from Minera, Texas, to Pescadito, Texas."

After a hearing by the Commission it entered the following order relating thereto:

"It is now, hereby, ordered by the Railroad Commission of Texas, that the revenue, accruing under the freight rates applicable for the transportation of the shipments in question, the same being carload shipments of soft coal from Minera, Texas, to Pescadito, Texas, shall be divided between the carriers, participating in the haul thereof, in proportion to the local rates of said Companies actually applying to and from the point of interchange, being Laredo,

Texas, through which the shipments actually moved; the local rates to be used as factors, being as follows:

"For the Rio Grande & Eagle Pass Ry. Co. Sixty-five (65) cents per ton.

"For the Texas-Mexican Ry. Co. Fifty-five (55) cents per ton."

This suit was brought by defendant in error in the District Court of Travis County, before the Honorable George Calhoun, District Judge, for writ of injunction to restrain the enforcement and to declare void the Railroad Commission's order No. 1427 alleging that said order was unreasonable, unjust and invalid because it authorizes a division pro-rate upon a joint tariff rate to a railroad for hauling its own property over its own line. Defendant in error alleges, "that the Railroad Commission of Texas had no power or authority to make, enter and promulgate said order in hearing No. 1427, dated February 24, 1914, for this: that no railroad in this state is entitled to any dividend pro-rate for hauling its own property over its own line." Defendant in error further alleged that the said order of the Railroad Commission is unreasonable and unjust to it because the billing by the Texas-Mexican Railway Company of coal to Pescadito was a mere scheme to get a reduced freight rate, and that a large number of cars of coal so billed were in fact not hauled to Pescadito but were stopped at Laredo, and that said railway company had failed and refused to revise the billing of cars so stopped or to advise defendant in error that said cars of coal had been stopped at Laredo and had not been hauled to the billed point of destination, and that said billing was fraudulent.

Plaintiff in error denied that the order was unreasonable or unjust, and alleged that a long time prior to the making thereof the defendant in error had voluntarily transported coal from Minera to Laredo and delivered the same to the International & Great Northern Railway Company under through rates, and had been voluntarily accepting a proportion of such through rates.

On trial in the District Court, judgment was rendered sustaining the order. In construing the order the District Court held that it applies only to shipments of coal that actually moved in transportation from Minera to Pescadito, and only to the particular cars of coal mentioned in the complaint on which said order was made, and to all similar shipments from Minera, on through shipment to Pescadito, made subsequent to the promulgation and notice of said order.

The Court of Civil Appeals in its first opinion sustained the validity of the order and affirmed the trial court's judgment, but on rehearing held that the Texas-Mexican Railway Company had no right to participate in the division of a through rate on its own line in the carriage of its own property, and therefore reversed and rendered the judgment of the District Court.

The question here presents itself squarely upon the issue whether or not the Railroad Commission of Texas had the right and authority to issue an order permitting a participation by the Texas-Mexican Railway Company in the division of a through rate on its own line of the transportation of its own property.   The other issues raised are only incidental to this one leading proposition.

It is not deemed necessary in this opinion to indulge in a general discussion of the authority and powers of the Railroad Commission of Texas under our Constitution and Statutes.   This court has fully amplified that subject in an elaborate opinion by Chief Justice Brown in the case of Railroad Commission v. Galveston Chamber of Commerce, 105 Texas, 101; 145 S. W., 573.   The principle is broadly laid down that unless an order of the Railroad Commission is shown to be clearly unjust and unreasonable it will be sustained, and that the burden of so showing is upon the party attacking it.   In this case, aside from the question stated above as to the right of a railroad to participate in a pro-rata dividend for hauling its own property over its own lines, there are no sufficient allegations or facts to justify a finding that said order is unfair or unreasonable.   There is no complaint that the 80 cent rate from Minera to Pescadito is not a just and fair rate, and there is no complaint that the division of the rate between those points as made by the said order is not a proper division as applied to commercial shipments.   In these respects the rate and its division are not challenged.   It is only as applied to a division of rate on "company coal" that complaint is made, on the ground that the company shipper is not entitled to a division on its own coal; that said coal is at home when it reaches the junction point, Laredo.   Defendant in error specially emphasizes the fact that quite a large number of the cars were not actually hauled through to Pescadito, but were stopped at Laredo.   However, in sustaining the validity of the Commission's order, the able trial judge held that it applied only to the cars and shipments that were actually hauled to Pescadito.

It is a well established ruling of the Interstate Commerce Commission of the United States that a railroad company as shipper is entitled to the same consideration as a commercial shipper, even when the shipment moves in part over the rails of such railroad company. Its rulings are uniform that in such case the carrier is entitled to a division of the joint through rate, and that the division must be fixed by the same considerations which would determine divisions upon through commercial shipments in which the railroad had no interest other than that of carrier; and that it would be discriminatory, and therefore unlawful, for carriers to make other or different divisions of rates.   36 I. C. C. Repts., 1; 20 I. C. C. Repts., 426.   In the last named Report that tribunal announces the rule as follows:

"A carrier as a shipper over the lines of another carrier may lawfully and properly take advantage of legal, tariff joint rates applying to a convenient junction or other point on its own line, provided such shipments are consigned through to such point from point of origin and are, in good faith, sent to such billed destination."

These rulings of the Interstate Commerce Commission have been held valid and affirmed by the Supreme Court of the United States. United States and Interstate Commerce Commission v. Butler County Railroad Co., 234 U. S., 29, 58 L. Ed., 1196, 34 Sup. Ct., 748; Interstate Commerce Commission and the United States v. Baltimore & Ohio Railroad Company, Pennsylvania Railroad Company, et al., 225 U. S. 326, 56 L. Ed., 1107, 32 Sup. Ct., 742, Ann. Cases, 1914 A, 504.

The very purpose of our constitutional provision and the statutes thereunder creating the Railroad Commission of Texas was to create a tribunal through which railroad rates would be fixed and adjusted and through which the railroad rates would be regulated so as to prevent discrimination, rebates, etc.

Sections 5 and 6 of Article 6654, R. S. 1911, read as follows:

"5. Rates for connecting lines.—The said commission shall have power, and it shall be its duty, to fix and establish for all or any connecting lines of railroad in this state reasonable joint rates of freight charges for the various classes of freight and cars that may pass over two or more lines of such railroads."

"6. Commission to fix when there is disagreement.—If any two or more connecting railroads shall fail to agree upon a fair and just division of the charges arising from the transportation of freights, passengers or cars over their lines, the commission shall fix the pro rata part of such charges to be received by each of said connecting lines."

We think these articles of the statute may reasonably be construed to embrace not only commercial shipments over two or more lines of railroad, but also shipments belonging to one of the carriers.

If a situation is artfully developed, by manipulating the billing and the haul, so as to produce an unjust discrimination or perpetrate a fraud, upon a proper showing the Railroad Commission doubtless would be able to find some means to defeat it; or upon a proper presentation the courts would grant appropriate relief. In this case it is not so much the application of the Commission's order, or abuses or fraudulent manipulation that might arise or be developed under it, that is the question for determination,—but the validity of the order itself.

Of course, one not satisfied with a division or rate made by the Commission may contest same in any court of competent jurisdiction, as provided by Articles 6657 and 6677f Vernon's Sayles' Tex. Civ. Statutes, as was done in this case; but the order of pro-rate would

be held valid unless the attacking party showed that it was unreasonable and unjust.

Under the findings of fact of the trial court and under its application of the law, the destination named in the waybill, Pescadito, was in fact the real destination, and the order of the Commission applies only to *shipments actually hauled to said point* as their final destination. The fact that the railroad company, the owner of th coal, thereafter re-billed and shipped the coal elsewhere, could not effect the validity of the order of the Railroad Commission nor control the merits of the shipments actually made and terminated under the waybill; nor could the fact that the Texas-Mexican Railway Company stopped some of the cars at Laredo, the junction point of the two roads, as alleged by defendant in error, invalidate the order or make it inoperative to the shipments actually hauled to Pescadito, and this would be true even if the Texas-Mexican Railway Company by stopping cars at Laredo intended to take an advantage of defendant in error. The reasonableness and validity of the order could not depend upon a misuse of it by one of the party carriers.

A railroad not only has the right to participate in a division of rates on shipments of its own over its own lines, but it would work a discrimination among railroads and as against commercial shippers for it not to do so. In the first place, it is just as much a tax upon its resources and equipment for it to haul its own property billed from a connecting carrier as it is to transport a commercial shipment. In rate making and providing for and creating revenue these hauls and other operating expenses would necessarily be taken into account, and a failure to participate would affect the commercial rates. No participation, or a participation based on any other than rates fixed by the Commission for all hauls of the same commodity, would enable railroads to favor or discriminate against one another and commercial shipments. We will not elaborate further, as these results have been fully illustrated and demonstrated in the Interstate Commerce Commission and U. S. Supreme Court cases supra.

The terms of the order are in accord with the universal practice of railroads; are in accord with the rulings of the Interstate Commerce Commission sustained by the Supreme Court of the United States; are in accord with the powers given the Railroad Commission of Texas under the Constitution and laws of Texas; and under the facts of this case are not shown to be unreasonable and unjust.

Therefore, the judgment of the Court of Civil Appeals is reversed, and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*