**TEXAS MOTOR COACHES, Inc., v. RAILROAD COMMISSION et al.**

No. 7615.

Court of Civil Appeals of Texas. Austin.

July 16, 1931.

Rehearing Denied Sept. 23, 1931.

Cantey, Hanger & McMahon, R. K. Hanger, and Warren Scarborough, all of Fort Worth, for appellant.

James V. Allred, Atty. Gen., and T. S. Christopher, Asst. Atty. Gen., for appellee Railroad Commission.

Phillips, Trammell, Chizum, Price & Estes, of Fort Worth, for appellee South Texas Coaches.

BAUGH, J.

Suit by appellant against the Railroad Commission and the South Texas Coaches, Inc., to perpetually enjoin as illegal and void an order of the Railroad Commission, dated December 5, 1930, granting to the South Texas Coaches, Inc., a permit to operate a motorbus line between Dallas and Fort Worth. A temporary injunction was granted, but at the hearing upon the merits the trial court sustained a general demurrer and numerous special exceptions to plaintiff's petition, dissolved the temporary injunction, and upon failure of plaintiff to amend, dismissed its suit; hence this appeal.

Plaintiff alleged that it had prior to September 1, 1927, with the approval of the Railroad Commission, purchased from the various owners 21 licenses or permits theretofore issued by the Railroad Commission to bus operators between Dallas and Fort Worth; and that thereafter it had continuously operated, under the supervision and regulation of said commission, an adequate schedule of bus service over State Highway No. 1, between Dallas and Fort Worth. It also alleged in considerable detail these schedules, the passenger rates between said points, costs of operation, gross and net revenues derived by it over said route covering the period from September 1, 1927, through September, 1930. These allegations showed an investment by appellant of $237,785; and that it had purchased in 1928, pursuant to orders of the Railroad Commission, 11 new motorbusses at a cost of more than $96,000. It also alleged reduction during said period, with the approval of the commission, of its scedule from 34 to 16 round trips per day between said points; and an increase of its fare from 50 cents to 93 cents for the trip. It further alleged that for the first three-quarters of 1930, ending with September, its net operating losses over said line between Dallas and Fort Worth amounted to more than $10,000. It also alleged facts showing that it had operated its service efficiently and had adequately met the public convenience and necessity in transportation between said points.

The route over which the commission granted a permit to the South Texas Coaches, Inc., to operate a competitive motorbus line between Dallas and Fort Worth and intermediate points, was a highway approximately parallel to Highway No. 1, over which appellant operated, and about 4 miles north of said highway.

The order complained of was alleged to be illegal and void:

1. Because the Railroad Commission failed to take into consideration in granting it:

(a) The adequacy of the service rendered by plaintiff between said termini;

(b) The amount of plaintiff's investment and its return thereon;

(c) The existing motor transportation facilities between said cities;

(d) Whether or not public necessity and convenience required or warranted such additional service;

(e) Whether or not the highway designated was of such type of construction and state of repair, etc., as is prescribed in section 7, chap. 270, General Laws 40th Legislature (Vernon's Ann. Civ. St. art. 911a, § 7), commonly called the Motor Transportation Act.

2. Because the Railroad Commission—

(f) Erroneously determined that necessity and public convenience demanded additional service between said cities;

(g) Erroneously authorized such competitive service contrary to the provisions, intent, and construction of the Motor Transportation Act.

3. Because if such public convenience and necessity demanded such additional service, under the terms of the Motor Transportation Act, plaintiff should have been permitted to furnish same:

(h) Because the purpose of the application of South Texas Coaches, Inc., was to establish a competitive service at a lower rate contrary to the provisions and purposes of the Motor Transportation Act;

(i) Because under the Motor Transportation Act plaintiff was entitled to be reasonably protected from detrimental competition.

It was also alleged that the operation of such competitive line would reduce appellant's revenue, further impair a fair adequate

return from the service performed by it under the regulation of the Railroad Commission, thus doing it an irreparable injury; and that the issuance of said order and permit was violative of the constitutional inhibitions against taking its property without due process of law, and those guaranteeing to it equal protection of the laws.

■ Appellees urged a general demurrer and numerous special exceptions, several of which were sustained. Since, however, the general demurrer was sustained, the only question here presented is whether the petition was sufficient as against such general demurrer to state a cause of action, and we need not consider the court's rulings on the special exceptions. And in so testing the sufficiency of plaintiff's petition every reasonable intendment must be indulged in support of it. Porter v. Burkett, 65 Tex. 383; Bigham Bros. v. Channel & Dock Co., 100 Tex. 202, 97 S. W. 686, 13 L. R. A. (N. S.) 656; Blum v. Kusenberger (Tex. Civ. App.) 158 S. W. 779; Cooper v. Casselberry (Tex. Civ. App.) 230 S. W. 231.

■ Plaintiff's allegations were we think sufficient, taken in their most favorable light, to assert the illegality of the order complained of. The order attacked recites that a hearing was had upon the application of the South Texas Motor Coaches, Inc., and other jurisdictional facts, and every presumption of verity is to be given to the acts of the commission. When directly attacked, however, in a proceeding brought for that purpose on the ground that the requirements of the law governing the granting of such permit had not been complied with, such presumption does not obtain as against a general demurrer which admits that the allegations are true.

■ The whole tenor of the Motor Transportation Act (Vernon's Ann. Civ. St. art. 911a, §§ 1–13, 15–19 and Vernon's Ann. P. C. art. 1690a) indicates that the welfare of the public is the matter of first consideration, and that permits to individuals or corporations to use the public highway for profit are not to be granted in any event if existing transportation facilities thereon are adequate; nor until and unless the Railroad Commission has ascertained that there is a need of, and a demand for, such additional facilities. Section 6 of the said act (Vernon's Ann. Civ. St. art. 911a, § 6) provides: "The Commission is hereby vested with power and authority, and it is hereby made its duty upon the filing of an application for a certificate of public convenience and necessity, to ascertain and determine under such rules and regulations as it may promulgate, after considering existing transportation facilities on such highway, the service rendered and capable of being rendered thereby, and the demand for, or need of additional service, if there exists a public necessity for such service, and if public convenience will be promoted by granting said appli-

cation and permitting the operating of motor vehicles on the highways designated in such application, as a common carrier for hire."

Section 7 of said act (Vernon's Ann. Civ. St. art. 911a, § 7), among other things, provides: "The Commission shall also ascertain and determine if a particular highway or highways designated in said application are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highway or highways by the general public for highway purposes."

■ While the commission is given considerable latitude in the manner in which it may proceed to ascertain the facts prescribed in the statute as prerequisite to the granting of such permit, the duties of the commission prescribed in the act are, we think, mandatory, and the commission is without authority to issue such permit until it has ascertained the facts prescribed by the statute as essential. It cannot act arbitrarily in such matters and issue such permit without ascertaining such facts.

Plaintiff's allegations, though somewhat general in nature, in substance charged that the commission had not complied with the requirements of the statute. If they had not the order was, we think, invalid. And the general demurrer admitted as true the allegations made.

■ If the permit attacked was not granted in accordance with the law, was appellant such "party at interest" within the meaning of section 17 of said act (Vernon's Ann. Civ. St. art. 911a, § 17) as is entitled to assert its invalidity? From the briefs and argument of counsel it appears that the trial court concluded that it was not. We think undoubtedly that it was. The mere fact that the permit was granted over a different and distinct highway does not destroy appellant's interest in the matter. The permit was to carry passengers between the same cities served by appellant. Obviously the major portion of the passengers would be through passengers between those cities; and the business of such permittee would directly affect that of appellant. We think the Motor Transportation Act itself recognizes appellant as such a party at interest, in requiring that an application for a permit contain, among other things, a map or plat showing not only the route proposed, but on which "shall be delineated the line or lines of any existing transportation company or companies over the *highways serving such territory*, with the names and addresses of the owner or owners thereof," etc. (section 8 [Vernon's Ann. Civ. St. art. 911a, § 8]). Said act also provides (section 9 [Vernon's Ann. Civ. St. art 911a, § 9]) that notice of hearing be given by the commission to the owners of such "existing transportation facilities over

the *highways, serving such territory* as applicant seeks to serve," etc. (Italics ours.)

We think the clear and necessary implication of the act itself is not to limit "parties at interest" to those operating on the particular highway involved, but to include those serving the territory adjacent, or, as in this case, operating between the same termini over different highways. If appellant's allegations are true, the operation of such competitor would be under a permit illegally issued and result to appellant the same as if it were operating without a permit. Under the allegations made, appellant's business as a common carrier, whether its permit be deemed a franchise or merely a license, would obviously be injured by the South Texas Motor Coaches, Inc., operation, and entitled to restrain such operation. Tugwell v. Eagle Pass Ferry Co., 74 Tex. 480, 9 S. W. 120, 13 S. W. 654; Lindsley v. Dallas Consol. St. Ry. Co. (Tex. Civ. App.) 200 S. W. 207; Ft. Worth Gas Co. v. Latex Oil & Gas Co. (Tex. Civ. App.) 299 S. W. 705; Memphis St. Ry. Co. v. Rapid Transit Co., 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B, 1143, Ann. Cas. 1917C, 1045; State ex rel. B. & M. Auto Freight v. Dept. of Pub. Works, 124 Wash. 234, 214 P. 164; Davis & Banker, Inc., v. Nickell, 126 Wash. 421, 218 P. 198.

Appellees contend that appellant was required, but failed, to allege clearly and specifically facts showing beyond a reasonable doubt that the order complained of was "unreasonable and unjust to it or them," such being the burden cast upon any complainant by section 17 of said act. The language there used is identical with that of R. S. art. 6454, relative to fixing rates, etc., on railroads. Such is undoubtedly the rule laid down in numerous cases as applied to fixing and regulating railroad freight rates. See Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S. W. 573; State v. St. Louis S. W. Ry. Co. (Tex. Civ. App.) 165 S. W. 491; Railroad Commission v. Rio Grande & E. P. Ry. Co., 111 Tex. 178, 230 S. W. 974; Houston Chamber of Commerce v. Railroad Commission (Tex. Civ. App.) 19 S.W.(2d) 583. But there is a necessary distinction between the nature and character of the railroads as common carriers on the one hand and that of motorbus lines as such common carriers on the other. In the case of the former their roadbed is their own property, fixed, immovable, and permanent in nature. Their right to transact their business thereon cannot under the constitution and laws be abridged nor revoked by the Railroad Commission. The commission's control over them is purely regulatory.

Whereas, in the case of the state highways no such right exists in any motorbus operator, his right to conduct his business thereon at all is purely permissive. Such right must first be granted by the commission after ascertaining the facts prescribed by the statute, before the commission's powers and duties in regulating the operation of that business are called into use. The matter of granting a permit, therefore, or the right to do business on the highways, is determined wholly by the needs and convenience of the public, the character of the highway, the ability of the applicant to render the service, etc.; in brief, by the conditions set out in the statute. It is not, therefore, strictly analogous to an order regulating operation after a permit to do business has been granted.

Regardless of such analogy, however, if in fact the commission, without complying with the requirements of the law, granted such permit, thus affording illegal competition to appellant injurious to its business, such order was we think as a matter of law unjust and unreasonable to it, whether appellant attacked it on that specific ground or by the use of the express language of the statute or not.

Appellees attack said pleadings as being insufficient in other respects, but these relate to matters raised by special exceptions. We do not interpret appellant's pleadings as asserting that it was entitled to a monopoly of motor bus transportation between Dallas and Fort Worth. Clearly it was not. Its permit was not exclusive, nor could the Railroad Commission grant it such. Nor was it entitled to be protected against competition, if the public convenience and necessity authorized the granting of such permit to a competing company over the same or a parallel route between said cities.

On the record as presented we have nothing before us to show in what manner the commission exercised its discretion in the premises, if it be assumed that it complied with the statute as to hearings, etc. We base our opinion on the allegations, admitted by the general demurrer to be true, that the Railroad Commission did not comply with the mandatory requirements of the law; that it did not ascertain the facts prescribed by the law as necessary to the granting of a valid permit. Appellant was entitled to a trial upon those issues. We refrain from a discussion of the issues raised by special exceptions.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for trial.

Reversed and remanded.