MAYOR, ALDERMEN, AND INHABITANTS OF THE CITY OF HOUSTON
v. THE HOUSTON CITY STREET RAILWAY COMPANY.

No. 3081.

1.  **Grant of Franchise Not Exclusive.**—A franchise or privilege extended by a city to a street railway company to construct and maintain a street railway along its streets does not interfere with the power of the city authorities over the streets, nor prevent a like grant to others. Such grant is not a monopoly.

2.  **Corporate Rights—Charters Construed—Street Railways.**—By legislative act, August 6, 1870, the Houston City Street Railway Company was incorporated. Section 8 of the act provides: "That all contracts made and entered into by and between the mayor and aldermen of the city of Houston and the said company, or any privi-

leges or rights granted by the said mayor and aldermen of the city of Houston to the said company, shall be in all respects legal and binding on the aforesaid contracting parties." The city charter special act, 1883, provided: "The city council shall have the exclusive control and regulation of all streets, alleys, public grounds, and highways within the corporate limits of the city, and to direct and control the laying and construction of railroad tracks, turnouts, switches, and to require that they be constructed and laid so as to interfere as little as possible with the ordinary travel and use of the streets. To control and regulate everything concerning street railways," etc. We are of the opinion that by the terms of both of these charters (clearly by that of the street railway company) the Legislature intended to and did confer ample authority upon the city council to grant the franchise in question (to use streets of the city for street railway purposes), and to extend it for a term of years, as it did do.

3. **Vested Right—Street Railway Franchise.**—We are also of opinion, the grant, having been duly accepted and acted upon by large expenditures by the street railway company, became a vested right or perfected contract which could not be subsequently repealed nor impaired by the common council or the authorities of the city; provided, however, there is no constitutional prohibition to the granting of such special privileges by the Legislature or under its authority.

4. **State Constitution—Street Railways.**—While section 7 of article 10 of the State Constitution is entirely prohibitory and not permissive, still it is a clear recognition of the right of any city to give its consent to the use of its streets by street railway companies, and it contains no limitation of the length of time for which such consent may be given.

5. **Legislative Power to Repeal Charter.**—In the Constitution of 1876, under which the contract was perfected, it is provided (Bill of Rights, sec. 17): "No irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature or created under its authority shall be subject to the control thereof." The city council repealed the ordinance which had been accepted and acted upon by the street railway company. The police under orders were preventing the construction of important parts of its railway system. The street railway company obtained an injunction preventing the interference by the city, etc. On appeal and touching the rights of the railway company as affected by the above provision in the Bill of Rights, *held:* We think the better opinion is, that the provision was intended to prohibit the Legislature from granting any "special privilege or immunity" in such way or of such character as that it could not be subsequently annulled or declared forfeited for such causes as might be defined by law, or condemned in the exercise of eminent domain; and it was further intended, that "all privileges and franchises" granted by the Legislature or under its authority should at all times remain subject to legislative control and regulation. It is held that the repealing act did not affect or destroy the rights of the street railway company acquired under the original city ordinance.

APPEAL from Harris. Tried below before Hon. JAMES MASTERSON. The opinion states the case.

*H. F. Ring*, city attorney, for appellant.— 1. Authority never having been conferred upon the city council to grant special franchises to private persons or corporations of any character whatsoever, in the use of the streets of the city of Houston for a term of years, so much of the ordinance under which the appellee claims a franchise for a term

of years was void, and subject to amendment or repeal at any time by the city council. Charter of City of Houston, sec. 23; Special Laws 21st Leg., p. 99; Rev. Stats., arts. 4166, 4173, 4174; Railway v. Brownsville, 45 Texas, 96; 67 Texas, 554; Cool. Const. Lim., sec. 195; Dill. on Mun. Corp., 97; Davis v. The Mayor, etc., 14 N. Y., 506; Milhau v. Sharp, 27 N. Y., 618; Coleman v. Railway, 38 N. Y., 201; State v. Graves, 19 Md., 351; Bryson v. Philadelphia, 47 Pa. St., 327; Ruttle v. City, 10 S. W. Rep. (Ky.), 640; Railway v. Railway, 10 Wall., 50.

2. The ordinance of date November 5, 1883, under which plaintiff claims a franchise for a term of thirty years, is unreasonably broad and comprehensive, and for this reason was void, even if the city council had authority from the Legislature to grant special privileges in the streets to corporations for a term of years; and as since the ordinance of date August 12, 1889, grants a mere privilege in the use of the streets designated, without specifying the time during which such privilege may be exercised, any subsequent city council had authority to repeal such privilege at any time.

*Jones & Garnett*, for appellee.—1. The appellee takes issue with the appellant on said assignment of error and appellant's propositions thereunder, and says the same are not well taken and present no reason why the judgment of the court below should be disturbed. Railway v. Railway, 65 Texas, 502; Railway v. City of Brownsville, 45 Texas, 96; Dill. on Mun. Corp., sec. 249; Cool. Const. Lim., pp. 206, 207; 4 Field's Lawyers' Briefs, sec. 651, and authorities cited; 2 High on Injunc., secs. 1243, 1247, 1318; 1 High on Injunc., secs. 701–704; Port of Mobile v. Railway, 4 South. Rep., 106.

2. Authority having been conferred by its charter on the appellant through its city council to exercise and have the exclusive control and regulation of all streets within the corporate limits of the city, * * * and to direct and control the laying and construction of railway tracks, turnouts, and switches, and to control and regulate everything concerning street railways; and the act of the Legislature incorporating the Houston City Street Railway Company expressly providing, "that this company under this act is authorized to build such roads on any street within the corporate limits of the city of Houston as may hereafter be agreed upon by the mayor and aldermen of the city of Houston and the Houston City Street Railway Company," and "that all contracts made and entered into by and between the mayor and aldermen of the city of Houston and the said company, or any privileges or rights granted by the mayor and aldermen of the city of Houston to said company, shall be in all respects legal and binding on the aforesaid contracting parties;" and the city having made the contract evidenced by the ordinances of November and December, 1883, and the company having accepted said contract and faithfully performed all its obliga-

tions under it; and spent over $90,000 on the faith of said ordinances and the rights thereby conferred, the said ordinances were not subject to repeal or amendment in any such manner as to affect or impair the appellee's right to enjoy all the privileges conferred by said ordinances. The appellee's rights under said ordinances, as shown by the facts, are vested rights that can not be taken away or impaired without adequate compensation being made.

Marr, Judge, *Section A.*—This suit was brought by the Houston City Street Railway Company, to enjoin the city of Houston from interfering with the laying of a street railway track by appellee on one of the streets of said city. A temporary injunction was issued, which on final hearing was perpetuated by the decree of the court, from which action of the court, in refusing to dissolve the injunction and in perpetuating the same, this appeal is taken.

Appellant's only assignment of error is as follows: "The court erred in rendering judgment against defendant, and in behalf of the plaintiff, and in failing to render judgment in favor of the defendant, because the charter of the city of Houston never authorized nor was authority ever conferred by the Legislature upon defendant's council to grant any special franchise or privilege of any character whatsoever in the use of the streets of said city of Houston for a term of years; and because the evidence showed that plaintiff had no right to use for street railway purposes the portion of the street in question after being notified of the passage of the ordinance of date July 28, 1890, repealing the first section of the ordinance of date August 12, 1889, mentioned in plaintiff's petition; and because no grounds whatsoever existed for the equitable interposition of the court."

Appellant's first proposition under the above assignment of error is as follows: "Authority never having been conferred upon said council to grant special franchises to private persons or corporations of any character whatsoever in the use of the streets of said city of Houston for a term of years, so much of the ordinance under which the appellee claims a franchise for a term of years was void, and subject to amendment or repeal at any time by the city council."

By his second proposition under the above assignment, the counsel for appellant contends that the ordinance passed by the city council, and "under which the plaintiff claims a franchise for thirty years, is unreasonably broad and comprehensive, and for this reason is void, even if the city council had authority from the Legislature to grant special privileges in the streets to corporations for a *term of years*, * * * and therefore any subsequent city council had authority to repeal such privilege at any time."

This proposition is scarcely embraced by the assignment of error, but we will notice the questions in their order. It appears that the city

council, by an ordinance passed July 28, 1890, attempted to repeal or annul the franchise or privilege of the plaintiff in so far as it had been previously authorized to construct its road "on Congress and Louisiana streets between Travis Street and a connection with its Glenwood line on Fifth Street;" and that while plaintiff was proceeding to make and was in the act of making such "connection," as above described, by the construction of the necessary line of railway, etc., the city officials in virtue of said repealing ordinance, immediately upon its passage, notified plaintiff thereof, interfered with the further prosecution of said work, and forcibly prevented the plaintiff from building and completing said line of railway upon said streets and from making said connection with its other line.

These acts of the city council and the city officers are made the basis of the suit for injunction. We may remark in this connection, that the question of the right of the plaintiff to an injunction is not properly presented in this case. The defendant filed only a general demurrer to the petition, and the record fails to show that it was called to the attention of the court below. It was not acted upon by the court, and should therefore be deemed to have been waived. It is unnecessary, under such circumstances, to enumerate the allegations of the petition upon which the plaintiff relied for equitable relief. We may however say generally, that the facts alleged would indicate that the plaintiff might suffer irreparable injury unless the defendant should be duly restrained by the process of the court. Mobile v. Railway, 4 South. Rep. (Ala.), 106. The original grant of the franchise to the plaintiff by the city of Houston was by an ordinance of its common council passed on the 5th day of November, 1883. The provisions of this enactment, so far as need be quoted, are as follows:

"1. That the right of way is hereby granted to the Houston Street Railway Company, organized under a charter passed by the Legislature of the State of Texas, on the 6th day of August, 1870, with the privilege of laying, using, maintaining, and operating a single or double track street railway, and all necessary sidetracks, turnouts, turntables, and switches, for the purposes and uses for which this grant is made, through and over any and all streets of the city of Houston, and the bridges thereon, including the bridges crossing Buffalo and White Oak bayous, which may be owned by the city of Houston, excepting that portion of Main Street south and west of Capitol Street, and that portion of Franklin Street east of San Jacinto Street, which portions of said streets are hereby reserved from this grant."

The sixth section of said ordinance is as follows: "That the using of any of the streets of Houston by said street railway company after the passage of this ordinance, for any of the uses and purposes specified in this ordinance, shall be deemed an acceptance of the grant therein made, and an acceptance of the terms and conditions herein

imposed, which said grant is to be used and enjoyed by said company. That said railway company shall avail itself of this grant of right of way within two years from the passage of this ordinance."

Section 7 of said ordinance is as follows: "That said street railway company, complying faithfully with the terms and conditions imposed by this ordinance, and the provisions of the charter of the city of Houston, as required by the city council, shall have and enjoy the rights, powers, and privileges herein granted and conferred for a term of thirty years from and after the passage of this ordinance."

It is agreed and admitted by the parties, that the plaintiff accepted the franchise granted by the city within due time, and has fully complied with all of the terms and conditions of the grant; that it has, in accordance with the rights and privileges granted, "constructed, equipped, and put in operation on the streets of said city fully fourteen miles of its street railway, and in accomplishing this result has expended over $75,000," etc. These things were all done by the plaintiff prior to January 1, 1888.

It may be observed at this point of the investigation, that the franchise or privilege granted to the plaintiff by the city of Houston, though it extends to nearly all of the streets of that city, is not of an exclusive character. The city by the terms of the grant is not prohibited from extending similar privileges to other railway companies. This view of a similar grant was directly announced by the Supreme Court in the case of Railway v. Railway, 65 Texas, 502, and it was further held, that subject to the right of the railway company to an easement in the streets to the extent in which the streets were occupied for that purpose by its "tracks, switches, and turnouts," the city's "dominion over the streets remained unchanged and unimpaired, and was as full and complete for all purposes" as it was before the extension of the grant. Such at least is the effect of the decision then made, and it coincides with our own views of the question. The grant to the plaintiff as extended by the city of Houston is not therefore void upon the ground that it confers an exclusive privilege, as it would have been under the Constitution if it had in fact created a monopoly in favor of the plaintiff. City of Brenham v. Water Company, 67 Texas, 542.

Upon the 12th day of August, 1889, the city council (for some reason which is not very apparent to us) passed an additional ordinance, which gave its permission to the plaintiff "to build and operate its street railway" upon a number of the streets of the city, including the right upon the part of the plaintiff to establish the "connection with its Glenwood line on Fifth Street," as before described. This ordinance did not specify the duration of the privilege granted, but it was enacted "subject to the terms and conditions of the original ordinance of November 5, 1883," etc.

It was this ordinance of August, 1889, which the city council attempted to repeal, as before stated, in July, 1890. This the appellant claims the city had the .lawful right to do, because the ordinance of 1889 did not extend the privilege for any definite length of time. We think that this position is of no consequence as affecting the merits of the controversy, if the right of the appellee to the exercise of its franchise had become vested and irrevocable before the expiration of the term, by reason of the original contract between the parties made or created in pursuance of the ordinance of November 5, 1883.

Whether the privileges originally granted to the plaintiff had become perfect or vested rights which the city could neither impair nor take away, must of course depend in the first place upon the validity of the original ordinance of November 5, 1883. It is claimed by the appellee that the city council possessed adequate authority to enact this ordinance, not only under the charter of the city, but also by reason of express authority to that effect as contained in the act of the Legislature incorporating the plaintiff company. The charter of the plaintiff, which was granted by the Legislature upon the 6th day of August, 1870, contains among others the following provisions:

"Section 8. That all contracts made and entered into by and between the mayor and aldermen of the city of Houston and the said company, or any privileges or rights granted by the said mayor and aldermen of the city of Houston to the said company, shall be in all respects legal and binding on the aforesaid contracting parties."

Section 9 of said act of incorporation provides, "That this charter shall remain in full force and effect for the period of fifty years."

The object of the Legislature in incorporating this company was to enable it to build a street railway in the city of Houston, and section 8 of the above charter was evidently intended by the Legislature to confer upon the city government plenary powers at least to make any contract (otherwise valid) with this company in reference to the establishing and constructing of its street railway, and in express terms contemplates the granting upon the part of the city, by contract or otherwise, the necessary "rights or privileges" to effectuate this purpose. Street Railway v. City of Covington, 9 Bush, 127. We also find in the charter of the city of Houston which was in force when the ordinance of November 5 was passed, the following provisions:

"The city council shall have the exclusive control and regulation of all streets, alleys, public grounds, and highways within the corporate limits of the city, and to direct and control the laying and construction of railway tracks, turnouts, and switches, and to require that they be constructed and laid so as to interfere as little as possible with the ordinary travel and use of the streets. To control and regulate everything concerning street railways," etc.

We are of the opinion that by the terms of both of these charters (clearly by that of the street railway company) the Legislature intended to and did confer ample authority upon the city council to grant the franchise in question to the plaintiff and to extend it for a term of years, as it did do. We also think, that according to the current of the authorities, the grant having been duly accepted and acted upon by appellee, became a vested right or perfected contract which could not be subsequently repealed nor impaired by the common council or the authorities of the city of Houston; provided, however, that there is no constitutional prohibition to the granting of said special privileges by the Legislature or under its authority. Railway v. City of Brownsville, 45 Texas, 96; 2 Dill. on Mun. Corp., 3 ed., sec. 727; 1 Id., sec. 314; Port of Mobile v. Railway, 4 South. Rep., 108; Railway Cases, 79 Ala., 469; Milhau v. Sharp, 27 N. Y., 611; City of Burlington v. Street Railway, 49 Iowa, 144; Dartmouth College Case, 4 Wheat., 519; Fletcher v. Peck, 6 Cranch, 137; Stein v. Mayor, 49 Ala., 362; Railway v. Anderson County, 59 Texas, 667; Const., art. 10, sec. 7. Those decisions, cited by counsel for the appellant, which deny the power of the city government, under its general authority over its streets, to grant the right to operate a street railway in such streets for private gain, were rendered in cases where the Legislature had not conferred upon the municipality the necessary authority to extend such franchise.

In reference to the second proposition submitted by the appellant, we hold that as the common council had legislative authority to grant the franchise in question, its duration was a matter for their exclusive determination. Whether it should be extended for two, five, or thirty years, was left to their wisdom and discretion. They could not, perhaps, abandon or transfer the ordinary control over the streets, of a legislative character, so as to prevent the proper and legitimate exercise of this authority by their successors in office; but this, as we have seen, they did not do. Nor was it in the power of the common council to create a perpetuity. Subject to these limitations, however, the wisdom and reasonableness of the grant and the length of time during which it should continue was addressed solely to the good judgment of the members of the common council. 1 Dill. on Mun. Corp., sec. 95. There is no pretense in this case that the use of the streets by the plaintiff has become a nuisance or amounts to an injury to the public, so we need not go into that branch of the subject. City of Burlington v. Street Railway, 49 Iowa, 144.

While section 7 of article 10 of the State Constitution is entirely prohibitory and not permissive, still it is a clear recognition of the right of any city to *give its consent* to the use of its streets by street railway companies, and it contains no limitation of the length of time for which such consent may be given.

We might end the discussion here and affirm the judgment of the District Court. But there is another provision of the Constitution of 1876 which may have some bearing upon the power of the Legislature or any municipal government under its authority to create for a definite period any "irrevocable or uncontrollable grant of special privileges," like the franchise granted to the plaintiff. Bill of Rights, sec. 17. This provision has not been invoked nor cited by counsel for the appellant, nor has it been discussed by counsel for either party. It is claimed, however, by the appellant, as already stated, that even if the Legislature had conferred authority upon the common council of the city of Houston to grant special privileges to corporations for a term of years, still the ordinance of November 5, 1883, which extended the franchise for the period of thirty years, would be void, because "unreasonably broad and comprehensive." This proposition most evidently does not directly present the question of the constitutionality of the ordinance in question.

We are loath to decide a constitutional question when it has not been directly raised and argued by counsel; yet we do not see how it can be ignored entirely. That the question is indirectly involved there can be no doubt, for the reason that although the plaintiff's charter was granted before the adoption of the present Constitution, still the rights claimed in this suit had not become vested, nor was the franchise granted by the city until long after the Constitution had gone into operation. Miss. Society v. Musgrove, 44 Miss., 820.

The article of the Constitution above cited reads as follows: "And no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature or created *under its authority* shall be subject to the control thereof." There is no doubt that the franchise as granted to the plaintiff is, in legal acceptation, "a special privilege." Bank v. Earle, 13 Pet., 595; 79 Ala., supra, 474; 27 N. Y., supra, 619; 3 Kent's Com., 458.

What, then, is meant by the other words, "irrevocable or uncontrollable grant?" This question is by no means of easy solution, and may possibly be understood in a different sense by different minds, or may give rise to diverse impressions in the same mind.

First. The decision of the Supreme Court of the United States in the celebrated Dartmouth College case, where it was declared that a franchise upon being accepted by the grantee became a perfect contract which the State could neither recall nor in anywise impair, has never been universally admitted to have been based upon sound principles of government. Many eminent writers and courts have thought that a franchise is a mere privilege extended by the sovereign power of the State which it could recall whenever it should be deemed advisable so to do. The courts have generally, however, from necessity,

yielded to the Supreme Court of the United States, but many have done so, if not sullenly, under apparent protest. Cool. Const. Lim., pp. 341, 342, and note 1. The pernicious and evil consequences of that decision have been frequently pointed out by judges and law writers, and the doctrine announced has never been cordially accepted by those who believe in the sovereign power of the State. Cool. Const. Lim., p. 340, and note 2. May not, therefore, the framers of our Constitution have intended by this provision to render impotent and inapplicable the principle announced in the Dartmouth College case, not only as to perpetuities but as to franchises for a term of years? 4 South. Rep., supra, 109. Did they not mean to say to the Legislature, "You may extend special privileges to corporations, but the right to recall the grant whenever you may deem it advisable is reserved and shall be an indispensable condition of the grant?" If so, the grantee would of course acquire the franchise subject to this reservation and condition, and it could be revoked or withdrawn by the power which extended it, whether that was the State Legislature or a municipality acting under the authority of the Legislature. In many other provisions of the Constitution we also observe evidence of great jealousy of corporate powers and franchises upon the part of the framers of that instrument. Arts. 10, 11, 12. Then, again, there was the celebrated subsidy to the International & Great Northern Railway Company, including an "immunity" from taxation for twenty-five years, which had but recently by an "irrepealable contract" been granted, and perhaps was in the mind of the Convention. Generally when it is said that a power is "irrevocable," we understand that the grantor can not withdraw nor call back the power.

Second. But the word "irrevocable" is frequently used in a somewhat different sense. It may mean a thing or denote a right or power which can not be annulled or vacated except for a sufficient cause. It may mean unalterable or irreversible. To revoke sometimes denotes the right to annul, rescind, or abolish. Webster. Revocation not only means the recalling of the power, but may denote "the vacating" of the grant for cause. Bouvier.

It may be that this is the sense in which the language of the paragraph before quoted is used. The framers of the Constitution may have intended merely to prohibit the Legislature from granting any "special privilege" which could not be annulled, condemned, or vacated in the manner and for the causes as might be prescribed by law. This view of the question is strengthened by the use of the word "uncontrollable" in the same connection, and the same clause most positively declares that all "privileges and franchises" shall be subject to legislative "control" and regulation. When we consider the effect and consequences of declaring that every grant of special privileges or franchises for a term of years by the State could be revoked or with-

drawn at the mere pleasure or will of the Legislature, we then very much doubt that the framers of the Constitution or the people in adopting it intended to reserve to or confer such power or authority upon the Legislature. The policy of the State seems to have been to encourage the building of railways and the investment of capital in similar enterprises.

If these special privileges or franchises in question can be recalled or terminated at the will of the Legislature, then it would follow that, under the same reservation in the organic law, every charter granted since the adoption of the present Constitution to any railway, telegraph, or telephone company, ice factory, gas or electric light company, etc., could be repealed or revoked at the pleasure of the Legislature, without the necessity of a judicial forfeiture. If the language of the Constitution admitted of no other construction, it would of course be the imperative duty of the courts to so interpret it, regardless of consequences. If any injustice results, "the remedy for such injustice must be found in the action of the people themselves, through an amendment of their work when better counsels prevail." Cool. Const. Lim., 88. Where the construction would lead to "monstrous and absurd consequences," the same learned author concedes the right and duty of the courts to "question and cross-question closely" the clause, to discover if it will not admit of another construction more in harmony "with the general purposes of such instruments." And here we invoke section 19 of the Bill of Rights, which not only protects property but also "privileges or immunities" from destruction, "except by due course of the law of the land." While not conclusive of the question, still this provision affords some evidence of the general purpose of the Constitution, and that its authors did not intend by the declaration contained in section 17 to announce that the continuance or duration of every privilege or immunity which might be "created by the Legislature or under its authority" should be entirely dependent upon its caprice or will. See also sec. 22, art. 4.

With the light before us at this time, we think that the better opinion is that this particular clause of the Constitution was intended to prohibit the Legislature from granting any "special privilege or immunity" in such way or of such character as that it could not be subsequently annulled or declared forfeited for such causes as might be defined by law or condemned in the exercise of eminent domain (Cool. Const. Lim., secs. 341-344); and it was further intended, that "all privileges and franchises" granted by the Legislature or under its authority should at all times remain subject to legislative control and regulation.

We are perfectly aware that we have not by any means exhausted the subject; but as the question under consideration has not been directly raised by the assignment of error nor discussed by counsel, as

before remarked, we think that a mere expression of opinion upon our part ought to suffice for the present, without attempting a definite decision of the question. We have merely indicated what, as it seems to us, would be the proper construction, but we do not finally commit ourselves to that view of the subject. We leave the question open to future investigation, should it be presented in another case. We will add that this provision of the Constitution could hardly be held to refer only to the grant of *exclusive* special privileges, for the reason that no such language is used, and besides, *monopolies* are prohibited by another section of that instrument (sec. 26).

Our conclusion is that the judgment of the District Court ought to be affirmed.

*Affirmed.*