## TEXAS MOTOR COACHES, Inc., v. RAILROAD COMMISSION et al.
### No. 7869.

Court of Civil Appeals of Texas. Austin.

March 15, 1933.

Rehearing Denied April 5, 1933.

924

Cantey, Hanger & McMahon and R. K. Hanger, all of Fort Worth, C. W. Trueheart, of Longview, and E. O. Mather, of Fort Worth, for appellant.

James V. Allred, Atty. Gen., and T. S. Christopher, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

Phillips, Trammell, Chizum, Price & Estes, Eugene Lary, and A. W. Dawson, all of Fort Worth, and George Purl, of Dallas, for appellee South Texas Coaches, Inc.

BAUGH, Justice.

This is the second appeal of this case. The first appeal involved only the sufficiency of the pleadings. See 41 S.W.(2d) 1074. In December, 1930, the Railroad Commission granted to the South Texas Coaches, Inc., hereinafter designated as appellee, a certificate of public convenience and necessity to operate a motorbus line between Dallas and Fort Worth over what is known as the northern route, that is, a route north of the Trinity river, substantially parallel to the Bankhead highway, or state highway No. 1, or southern route, over which appellant then held a similar certificate. Appellant sought to set aside such certificate to the South Texas Coaches, Inc., and to enjoin its operation thereunder on the grounds, substantially, that no such public convenience and necessity was shown to have existed which would authorize the commission to grant such certificate, because the service furnished by appellant in that territory was adequate; that such operation would be competitive with appellant's line, and would destroy its investment by cutting its income far below its cost of operation; that the highway over which such new line would operate was not of such type of construction and state of repair as would permit it; that, if such additional service between said cities were needed, appellant should be given opportunity to furnish it; and that the existing service furnished by appellant should be protected against ruinous competition.

Trial was to a jury, but, at the close of the evidence, the case was withdrawn from them by agreement, decided by the court, and all the relief sought by appellant was refused. From this judgment the Texas Motor Coaches, Inc., has appealed.

Appellant's first two propositions assert that the granting of such certificate or permit is unjust, unreasonable, and arbitrary as to it because the evidence showed that public convenience and necessity would not be served by granting same; and also because appellant was, under a certificate theretofore granted to it to operate over the southern route, already furnishing a satisfactory and reasonably adequate service between said two cities.

These contentions cannot be sustained. Appellant cites cases from other states defining what constitutes a public convenience and necessity and discussing the matter which the commission should take into consideration in so doing. It is obvious, we think, that the Legislature clearly intended that such determination should be based upon a public or community interest as distinguished from any private interest, or the interest of any group of private individuals; and that the term "public necessity" was used in a relative, and not in an absolute, sense.* Sections 3, 6, 7, and 8 of what is commonly known as the Motorbus Act (chapter 270, Acts 1927, 40th Leg., as amended by Acts 1929, 41st Leg., 1st C. S., chap. 78, § 3 [Vernon's Ann. Civ. St. art. 911a, §§ 3, 6–8]) prescribe at some length what the Railroad Commission should take into consideration in determining these matters, and in the exercise of their discretion in granting or refusing such permits. Section 3 of said act (Vernon's Ann. Civ. St. art. 911a, § 3) in effect provides that a public convenience and necessity exists requiring the issuance of such permit "when existing transportation facilities on any highway in this State do not pro-

vide passenger service which the Commission shall deem adequate to provide the public convenience on such highway," etc. Obviously it was the purpose of the statute to vest in the commission a broad discretion in ascertaining . and determining what facts should constitute adequate transportation facilities in any given case; and, unless that discretion is abused, the courts will not disturb it. The courts will not decide whether, under the evidence offered upon a trial of such issue, had in accordance with the provisions made in the act, the court itself would grant or refuse a permit, but whether there is substantial evidence to support the action of the commission in the premises. All these matters and numerous cases bearing thereon were discussed fully by this court in Railroad Commission v. Shupee, 57 S.W.(2d) 295, and further discussion here would be but a repetition of what was said in that case. The powers of the courts to set aside, and the degree of verity to be given to, the orders of the Railroad Commission within the scope of the authority delegated to it or imposed upon it by statute, were defined by our Supreme Court in Railroad Commission v. Weld & Neville, 96 Tex. 409, 73 S. W. 529, and Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 115, 145 S. W. 573; and the holdings in those cases have since been repeatedly reaffirmed and followed.

■ We shall not here undertake to summarize or restate the evidence in this case. The statement of facts discloses, in addition to maps, plats, and documentary evidence, the testimony of 45 witnesses, and comprises 555 pages. It discloses substantial evidence bearing upon all matters which the commission is directed by the statute to take into consideration. Appellant operated 17 schedules daily between said cities over highway No. 1, a direct route between said cities, running south of the Trinity river. The route over which appellee's permit was granted was a distinct and separate route north of the Trinity river running through some three or four towns and villages, and a developing rural area, substantially parallel to the southern route and varying from three to six miles from it, and served communities not served, nor offered to be served, by appellant. Appellee began operation about January 1, 1931, and at the time of the trial was carrying about 175 passengers daily, about half of whom were through passengers, and serving schools, residents, and industries advantageously in the intermediate area. The trial court found, upon sufficient testimony to sustain it, that, though appellant's line furnished adequate service over its route, it was wholly unable to render the needed service over the northern route; and that, whatever the competition the northern route furnished to appellant, it was more than offset by the convenience and necessity of the public served over the northern route. These were all matters to be considered by the commission in the exercise of its discretion, and there was substantial evidence to sustain their finding thereon.

■ Appellant's next proposition urges that the granting of such permit created ruinous competition on through traffic between said termini, rendered it impossible for appellant to secure a fair return upon its investment, and destroyed its ability to earn a reasonable return and at the same time maintain an adequate service.

The record discloses that appellant had made an aggregate investment in equipment of approximately $238,000 and that it had operated at a loss of more than $55,000 since it began in 1927. Reduction of schedules and increase in fare had been granted to appellant by the commission because of diminished traffic and a growing deficit in its operation. Its contention is that it can furnish all of the service needed between Dallas and Fort Worth, and, but for the competition of appellee over the northern route, could operate at a reasonable profit. The finding of the trial court, however, sustained by evidence, was that the number of persons carried by appellant between said cities after operation on the northern route began was greater than it was before such operation began. And that the loss of revenues suffered by appellant as compared with that received in 1927 was due to other sources than to competition by appellee, e. g., railroads, interurbans, and increased use of private automobiles. The record also discloses that appellant's line of motorbusses and the electric interurban between said cities were both owned and operated under the same management, along closely paralleling routes, serving the same territory. It may also be observed in passing that since the economic collapse of 1929 all forms of transportation, as a matter of common knowledge, have been seriously curtailed and earnings diminished without regard to competitive agencies.

Neither an adequate return nor permanency of operation, however, is guaranteed to appellant under the law. Its use of the state's highway for profit is only permissive, subject to cancellation as occasion may demand, and authorized only in so far as, and as long as, it meets a public need and convenience. The state can exclude it entirely from use of its highways, should public convenience and necessity demand it, even though such exclusion imposed a heavy loss upon such carrier. And, if public convenience and necessity require it, permit to operate over a different route between the same termini may be granted by the state, though such operation prove competitive to lines already established. The public need and convenience, and not the effect on existing carriers, is the matter of first concern, though

the latter is undoubtedly a matter for the commission to take into consideration in granting such permit. Petersburg, etc., Ry. Co. v. Virginia, 152 Va. 193, 146 S. E. 292, 67 A. L. R. 931; 42 C. J. 688. The commission should, and is so directed by the statute, take into consideration the effect that granting competitive service between the same termini would have upon the continued ability of existing motorbus carriers to render and continue an adequate service, commensurate with public convenience and needs; and should so act as to protect the public interest. If public convenience and need outweigh, as the trial court and the commission found in this case that it did, the private interests of those already in the field, the latter become subservient to the former, and must abide the result, even though it involve financial loss. All these things, and the weight to be given them, were matters within the scope of the powers delegated to the commission to determine; and, unless the commission abused its discretion in the conclusions reached, the courts are not at liberty to set aside the result. Texas Motor Coaches v. R. R. Com. (Tex. Civ. App.) 41 S.W.(2d) 1074, 1078; R. R. Com. v. Shupee, supra; Mayor of Houston v. Houston St. Ry. Co., 83 Tex. 548, 19 S. W. 127, 29 Am. St. Rep. 679; section 5, art. 10, Texas Constitution. And this is true where the use of the same highway is involved. In the instant case, however, the permit contested was over a distinct and separate highway serving in part at least a separate and distinct territory from that served by appellant, and one which the trial court found could not be served by appellant in operating over the southern route.

■ Appellant's next contention is that, if the service rendered by it between Fort Worth and Dallas were in fact inadequate, and additional service needed, it being ready, able, and willing to afford such additional service, the Railroad Commission should have granted it such opportunity, even over the northern route, instead of permitting a competitor to do so. Numerous cases from Illinois and Ohio are cited, announcing such general rule and holding that, where unnecessary competition to existing lines is authorized, added expense and ruinous competition usually result which ultimately add to the expense and inconvenience of the public; and that, since the state controls both the service and the rate, existing established carriers should be protected and given priority of opportunity to meet the public need. West Suburban Transp. Co. v. Ry. Co., 309 Ill. 87, 140 N. E. 56; Chicago Rys. Co. v. Commerce Com., 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938; Egyptian Transportation System v. L. & N. Ry. Co., 321 Ill. 580, 152 N. E. 510. In those states, however, as in Texas, the interests of the public are matters of paramount concern. The Texas Motorbus Act, § 6 (Vernon's Ann. Civ. St. art. 911a, § 6), clearly enjoins upon the Railroad Commission the duty of taking into consideration, when a permit is applied for, existing transportation facilities on such highway, and not only the service being rendered, but that capable of being rendered, by such operators. This provision clearly contemplates that the rights of existing motorbus carriers should be protected against competition so long and so far as consonant with the public need and convenience. If, however, the service rendered over one route or highway is not adequate to meet the needs of adjacent territory which must be served over another highway, though between the same termini, it was a matter peculiarly within the realm of the commission's functions to determine whether such public convenience could be best met by an operator between said termini already in the field or by granting a permit to a competitor. The act itself, section 7 (Vernon's Ann. Civ. St. art. 911a, § 7), clearly contemplates motorbus competition with existing railroad and interurban lines in the same territory; and the Constitution of the state prohibits elimination of competition in the railway field. Section 5, art. 10. See, also, article 1, § 26, Tex. Const.; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143; Texas Motor Coaches v. R. R. Com., supra, relating to monopolies as contrary to the Constitution.

■ In the instant case, however, there appears no offer and no disposition on the part of appellant, either before the Railroad Commission, or in the trial court, to furnish any added service in the territory affected by the grant of the permit attacked. It is clear that additional service, if given by it, over the southern route, would not afford a local service, which was 50 per cent. or more of appellee's business, on the northern route. Appellant's contention was first that no additional service was needed; or, if it were, that it could furnish such service over the southern route. Its chief purpose, however, was clearly to eliminate competition, and secure more of the through traffic between the termini, not to afford additional service over another and different route between said two cities. If the commission had ordered it to furnish over the northern route the same service now afforded by appellee, it would undoubtedly have made the same protest it now presents here. It is therefore in no position to complain that the commission, after finding that a public necessity and convenience demanded additional service over such other route, granted such permit to appellee, as it was clearly under the law authorized to do.

■■ Appellant's next contention is that the order granting the permit is void because

it contains no findings of facts upon which it was granted. This contention is not sustained. We find nothing in the statute requiring that the commission set out in its order the facts on which such order is based. Appellant makes no contention here that it did not have full notice of appellee's application, nor full opportunity to appear before the commission on the hearing and present its protest. Having complied with the law in these respects, the commission's proceedings are presumed to have been regular; and the burden rested upon appellant to show by a preponderance ·of the evidence that they were not. Section 17, Motorbus Act (Vernon's Ann. Civ. St. art. 911a, § 17). Absent a showing by appellant that the commission did not comply with the law, and did not take into consideration the facts which the statute makes it their duty to consider, as stated in R. R. Com. v. Galveston C. of C., supra, a high degree of verity must be given their order. The test of the validity of the order, where entered after a hearing and consideration of the facts specified in the statute, is whether it is unreasonable, unjust, and arbitrary as to appellant, under the facts shown by the evidence upon the trial of the case.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.