## CENTRAL FREIGHT LINES, Inc., et al. v. SADLER et al.

### No. 8972.

Court of Civil Appeals of Texas. Austin.

Jan. 29, 1941.

Rehearing Denied Feb. 19, 1941.

Herbert Smith, of Austin, Rawlings & Sayers, of Fort Worth, Scott & Wilson, and W. E. Cureton, all of Waco, and Nelson Scurlock, of Fort Worth, for appellants.

James Henry Beall, Jr., of Sweetwater, and Culbertson, Morgan, Christopher & Bailey, of Fort Worth, for appellees Comet Motor Freight Lines, Inc., et al.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis and Geo. W. Barcus, Asst. Attys. Gen., for appellees Railroad Commission et al.

BLAIR, Justice.

This litigation arose as an appeal under the Motor Carrier Act (Vernon's Ann.Civ. St. Art. 911b, Sec. 20), from an order of the Railroad Commission granting appellee, Comet Motor Freight Lines, a corporation, a certificate of convenience and necessity to operate a certain common carrier motor carrier service. Appellants, several railroad and motor carrier companies serving parts of the territory involved, unsuccessfully sought in the trial court and here seek to set aside the order granting the certificate and to enjoin any operation under it, contending as follows:

1. That the order granting the certificate is void because there was no substantial evidence adduced before the Commission showing a public convenience and necessity for the proposed service, and that for the same reason the order is arbitrary and unreasonable.

2. That the application made by Frank A. Blankenbeckler, trustee, for the certificate to be issued to a corporation to be formed did not meet the requirements of Art. 911b, Sec. 1(a) of the Motor Carrier Act.

3. That the application for the certificate did not meet the requirements of Art. 911b of the Motor Carrier Act, in that it did not point out the inadequacies of the existing service over the proposed route.

4. That the findings of fact of the Commission were not sufficient to support the order granting the certificate; and that the "Commission failed to file along with its order findings of fact as required by Art. 911b, Sec. 12(a)" of the Motor Carrier Act.

Neither of these contentions is sustained.

Point "1" presents the sole legal question that the order granting the certificate is void because there was no substantial evidence adduced before the Commission showing a public convenience and necessity for the service, and that for the same reason the order was arbitrary and unreasonable. The first part of point "4" presents the legal question that the findings of fact of the Commission are not sufficient to support the order granting the certificate. The pertinent assignments of error raise only these two legal questions as to the sufficiency of the evidence and findings of fact, which are so related that they will be considered together; and neither of these questions or contentions is sustained.

Two hearings of the application for the certificate were held by the Examiner of the Commission, one at Mineral Wells lasting two days, and another at Austin lasting one day. The testimony taken at these hearings was reduced to writing in question and answer form by the official reporter. Numerous exhibits, maps, and other data relating to the amount of freight available for transportation and the proposed routes were also introduced on these hearings. Upon these records, and other matters of which the Commission took judicial knowledge, it entered its order granting the certificate, making extensive findings of fact and conclusions upon which it based its order, which authorized appellee to operate a common carrier motor carrier service as follows:

Route 1. San Antonio to Wichita Falls and all intermediate points, using State Highway No. 66, U. S. Highway No. 281.

Route 2. Stephensville to Fort Worth and all intermediate points, using State Highway No. 10, U. S. Highway No. 377.

Route 3. Burnet to Austin and all intermediate points, using State Highway No. 29.

Route 4. Austin to Blanco, using U. S. Highway No. 290 to the junction of U. S. Highway No. 290 and U. S. Highway No. 281, thence to San Antonio.

The certificate authorized the transportation of property and commodities generally for hire over these routes giving "through over night service between San Antonio and Wichita Falls; Austin and Wichita Falls and vice versa; San Antonio and Fort Worth, Austin and Fort Worth, and vice versa seven days a week, using six (6) truck tractors with van trailers, but not serving Wichita Falls on shipments originating in Fort Worth and vice versa."

A photostatic copy of a map introduced in evidence before the Commission and in the trial court, showing by a connected line the complete route of all proposed

operations together with the distances between the principal cities and towns to be served, is here inserted:

Since the findings of fact made by the Commission in its order granting the certificate are attacked as being insufficient

HIGHWAY MILEAGE

| WICHITA FALLS | 00 | 338 |
|---|---|---|
| WINDTHORST | 24 | 314 |
| ANTELOPE | 36 | 202 |
| JACKSBORO | 58 | 280 |
| MINERAL WELLS | 89 | 249 |
| STEPHENVILLE | 130 | 208 |
| F T. WORTH | 197 | 275 |
| HICO | 149 | 189 |
| HAMILTON | 171 | 167 |
| EVANT | 187 | 151 |
| LAMPASAS | 216 | 122 |
| BURNET | 239 | 99 |
| AUSTIN | 295 | 113 |
| MARBLE FALLS | 253 | 85 |
| JOHNSON CITY | 275 | 63 |
| SAN ANTONIO | 338 | 00 |

RAILROAD MILEAGE

| WICHITA FALLS | 00 | 395 |
|---|---|---|
| AUSTIN | 370 | |
| SAN ANTONIO | 395 | 00 |

to support the order, we quote them in full, as follows:

"State Highway No. 66 over which the principal operations will be performed is the most .direct route between San Antonio and Wichita Falls. It traverses the heart of Texas serving many commercially important cities and towns within the State. This highway beginning, so far· as this State is concerned, at the Red River north of Wichita Falls traverses a rich and growing agricultural section of the State, and although this application concerns this highway and territory only as far south as San Antonio, the highway itself continues to the Rio Grande River in the southern most part of the State. The citizens along the route have long sought such a highway and it promises to become one of the principal arteries of travel, trade and commerce north and south· through the very heart of the State. Already many improvements have started along the route and it is not unreasonable to expect that this new route will play a part in future development of this territory. This road is of the most modern in type, design and construction.

"Fort Worth will be reached by the use of State Highway No. 10, which is a good paved route connecting with Highway No. 66 at the City of Stephenville. Fort Worth is a large and growing manufacturing and distributing center for the cities and towns along all of the routes proposed to be served by applicant as· well as one of the primary marketing centers for these same cities and towns. Many of the products of the area served by State Highway No. 66 are marketed in Fort Worth. Many of these products which were shown to move in considerable volume, are of a perishable nature such as eggs, butter fat and dressed poultry. Adequate, rapid transportation service is necessary to the development of many of the industries with which this territory is concerned, particularly those mentioned.

"What has been said with reference to the city of Fort Worth may also be said as to the city of San Antonio, the southern terminus of the proposed operations: By and large it also applies to the City of Austin which consumes or is the market for large quantities of the products of the area to be served including, in addition to other products named, large quantities of pecans which are moved to both Austin, ·San Antonio, and Fort Worth.

It was made to appear that thousands of pounds of these products move annually and that existing services for this movement was inadequate. In fact it was made to appear that much of this movement now takes place by private trucks. The Commission considers it to be its duty to develop a regulated common carrier system ·by highway adequate to the needs of the commerce of the State and believes it to be in the interest of the public from the standpoint of a common carrier system and in the conservation of the states highways to provide and encourage a common carrier system that will relieve the highways as far as may be reasonably possible of the private trucks.

"The city of San Antonio has long sought adequate carrier facilities to the north and to Wichita Falls. It has made many efforts over a period of more than ten years to secure such facilities. It has attempted to encourage and assist in the construction of a rail line to serve this territory as an aid in the development of the city as a manufacturing and distributing center. These efforts have never been realized but it is believed that adequate motor carrier service such as is proposed by applicant will answer this long felt need.

"Most of the cities and towns along the route of highway 66 have been active in securing the construction of these highways which the commission judicially knows were not and are not for mere pleasure purposes alone but primarily as an artery of business, trade and commerce. This is particularly true of Mineral Wells as well as San Antonio and Wichita Falls. There is no direct through common carrier service over this route between the terminal cities of San Antonio and Wichita Falls over the proposed routes. The same is true also as to Fort Worth and Austin. The large manufacturing and distributing centers of San Antonio, Austin, Fort Worth and Wichita Falls maintain a constant interchange of commodities in their commercial relations and intercourse requiring adequate carrier facilities. It is in the public interest that every facility be provided necessary to the present and future development of each and every section of the State. That the larger centers of trade should be linked in commerce by carrier facilities over the most direct highway routes cannot be doubted. By so doing the larger centers profit by their support of the less developed sections of the State

and contribute their share toward the general prosperity.

"Perhaps more important still, when we look to the conservation of the highways of the State, as we must, it seems to us that adequate motor carrier routes serving all of the cities and towns of the State and at the same time relieving more highly congested highways of a portion of the burden of traffic is distinctly in the interest of the public. Motor carrier traffic should, in our opinion, be required to so adapt itself as to make a minimum use of the highways.

"The movement of property for hire should not be required over circuitous routes when direct routes are available enabling this Commission to establish routes which would minimize the use of the highways which it is our duty to conserve to the general public. The routes proposed by applicant are the most direct routes between the four principal termini proposed to be served. The granting of this application will tend to relieve to a degree the present traffic on State Highway No. 2.

"Direct short routes are to be preferred to circuitous routes. Through routes are more convenient and necessary than connecting line routes. This is especially true on account of modern day methods of merchandising which is established in this record as well as being judicially known to this Commission. Smaller stocks of merchandise with resulting smaller capital investments and quick turn overs is present day business practice. Such being the rule carrier service affording prompt fast service is necessary to modern day commercial practices. The city of Wichita Falls has as one example of this practice a very large manufacturing plant, making and distributing cotton work clothing. This manufacturer distributes to practically all of the points on the proposed operation. Next morning deliveries of this product is required both by the shipper and the consignee to points along the proposed route. This shipper does not now have such service available.

"From the foregoing it is obvious that we must conclude and do now find (1) that the highways here involved are of such type of construction and in such state of repair and maintenance as to permit of the use sought to be made thereof by the applicant without undue injury or damage to said highways and without unreasonable interference to the general traveling public; (2) that the present and future public convenience and necessity requires the granting of this application; (3) that the granting of the application will minimize the use of the highways and conserve their use to the general traveling public; (4) that the application should and will be granted authorizing applicant to operate over the routes set forth herein as a common carrier of commodities generally for hire using in such operation six trucks; (5) that the applicant is fit, willing and able to render such service.

"Frank A. Blankenbeckler, Trustee, applicant herein proposes that before this certificate is issued that a corporation be formed with a capital structure of not less than $10,000.00, the stockholder to be himself, James H. Beall, Jr., and T. S. Christopher, each of whom were present in all the hearings, confirmed this statement and suggested that this order should be issued contingent upon the fulfillment of this agreement by said parties presenting to this Commission a corporate charter showing capital stock fully paid. It is therefore now made a condition precedent to the issuance of a certificate under this Order that this condition and agreement be fulfilled and it is ordered that when the same is fulfilled that certificate issue herein to such corporation using such corporate name as the said stockholders may elect to use."

The condition with regard to forming a corporation to operate the service under the certificate was complied with and a certified copy of the charter incorporating Comet Motor Freight Lines with a capital stock of $10,000 fully paid was filed with the Commission, whereupon it issued the certificate in question.

The basic facts showing a public convenience and necessity for the proposed service as established by the evidence adduced before the Commission, and as found by it in its order granting the certificate, are summarized as follows:

State Highway No. 66, over which the principal proposed operations are to be made, is the most direct route either by highway or railroad between San Antonio and Wichita Falls, and there is no other direct daily overnight, with early morning delivery, common carrier service over this route. This highway is of the most modern type, design and construction, and capable of sustaining the proposed carrier

service which will not interfere with the public in its use of this highway; and the same is true with respect to the construction and use of each of the other highways over which the proposed operations are to be made. San Antonio, Austin, Fort Worth and Wichita Falls are the four principal terminal cities to be served by the proposed operations; and the routes authorized by the certificate are the most direct routes between them, except from Fort Worth to Wichita Falls, and with the same exception there is no other direct daily common carrier service over the entire proposed routes between the four terminal cities; and, in addition, all intermediate towns and cities on the proposed routes will be given daily service between each other and all terminal cities, and with interchange service to and from all parts of the State where available. The four terminal cities are marketing centers of the intermediate towns and cities, and for the area served by each of the proposed routes. · A considerable volume of perishable products, such as eggs, butter fat, dressed poultry, and nursery plants, which require adequate, rapid transportation facilities to fully serve and develop these industries, will move over these proposed routes; and several shippers of these products in cities and towns, particularly along State Highway No. 66, testified that they do not have such service and are compelled to make shipments over circuitous routes of interchange lines of railroad or other motor truck companies, which causes delay and is not satisfactory, and in many instances the use of the privately owned trucks of the shippers and merchants is necessary. Other shippers of large amounts of merchandise and commodities of trade testified that the proposed direct overnight service with early morning delivery is needed and will be used by them in shipments to and from all terminal cities, to and from all intermediate points and terminal cities, and between all intermediate points; and that such service is not now being furnished by any other common carrier. Modern· day merchandising in use along the proposed routes, which requires daily overnight delivery so that smaller stocks and investments with quick sale may be had, will be benefited by the proposed service, the cotton work clothing factory at Wichita Falls being cited by the Commission as illustrative, and no such service is now available over the proposed routes. A considerable volume of mer-

chandise, produce and pecans is also transported over the routes by privately owned trucks, which the proposed operations will tend to minimize, thus conserving these highways. A large amount of tonnage that will be transported over the proposed routes is now being transported by circuitous interchange routes over State Highway No. 2, where present traffic is highly congested, and the Commission found that the proposed operations will tend to relieve such congestion of traffic. Applicant traveled over and investigated the proposed routes and operations for a period of four months, discussed them with prospective shippers, commissioners' courts, and officials in all cities and towns along the routes, and ·found available for transportation wool, mohair, poultry, eggs, cream, pecans, machinery, and merchandise of all description, sufficient in quantity to justify the proposed operations. Maps, plats, and exhibits showing the tonnage available and hauled over the parts of the territory served by appellants were also in evidence.

■ ■ We are of the view that the evidence adduced before the Commission, as above summarized, is substantial evidence, showing a public convenience and necessity for the proposed service; and that it sufficiently supports the findings of fact of the Commission and the order granting the certificate. The matter of granting certificates of convenience and necessity to common carrier motor carriers of property for hire over the public highways of this State has been by the Legislature (Art. 911b) vested exclusively in the sound discretion of the Railroad Commission; and the rule is settled that on the statutory appeal from an order of the Commission granting such a certificate, the courts are only authorized to review the order to determine if it is within the law, and to require that it shall be based upon substantial evidence, and not upon an arbitrary or capricious exercise of the Commission's discretionary power and authority, and that the court is not authorized to substitute itself for the Commission to try the matter anew as an administrative body, substituting its findings of fact for those of the Commission; and as stated by Chief Justice McClendon in the case of Railroad Commission v. Rapid Transit Company, Tex.Civ.App., 92 S.W.2d 261, 262, "the law upon this question is now so thoroughly settled as to require only

a reference to the leading cases thereon. Railroad Commission v. Shupee (Tex.Civ. App.) 57 S.W.2d 295, affirmed 123 Tex. 521, 73 S.W. (2d) 505; Railroad Commission v. Winkle (Tex.Civ.App.) 57 S.W. (2d) 287; Texas Motor Coaches v. Railroad Commission (Tex.Civ.App.) 59 S.W. (2d) 923, affirmed 123 Tex. 517, 73 S.W. (2d) 511; Railroad Commission v. George A. Scott Truck Line (Tex.Civ.App.) 57 S. W. (2d) 293; Railroad Commission v. Inter-City F. Co. (Tex.Civ.App.) 57 S.W. (2d) 290; Railroad Commission v. Winkle (Tex.Civ.App.) 57 S.W. (2d) 287; Railroad Commission v. McDonald (Tex.Civ. App.) 90 S.W. (2d) 581."

■ It is further observed that the attacks made by the appellants upon the sufficiency of the evidence to support the findings of fact of the Commission and the order granting the certificate are in most general terms, and they brief the case largely from the standpoint of the operations of each of them over their different routes, which serve only parts of the territory proposed to be served by appellee, contending that the undisputed evidence shows that the service rendered by each of them is adequate for the particular territory served; that by interchange of service over State Highway No. 2, and other established routes, appellants furnish daily service to many of the cities and towns on the proposed routes of appellee; and in substance that the additional service proposed by appellee will involve financial loss to those already in the field. We regard the evidence, as above summarized, as showing that neither of the appellants operates over all of the proposed routes of appellee, and that neither of them furnishes daily overnight with early morning delivery service as proposed by appellee, and from which facts the Commission found that the present and future public convenience and necessity required the proposed service. These facts bring the instant case squarely within the rule stated by Associate Justice Baugh for this court in the case of Texas Motor Coaches v. Railroad Commission, supra [59 S.W. 2d 926], as follows:

"If public convenience and need outweigh, as the trial court and the commission found in this case that it did, the private interests of those already in the field, the latter become subservient to the former, and must abide the result, even though it involve financial loss. All these things,

and the weight to be given them, were matters within the scope of the powers delegated to the commission to determine; and, unless the commission abused its discretion in the conclusions reached, the courts are not at liberty to set aside the result. Texas Motor Coaches v. Railroad Comm. (Tex.Civ.App.) 41 S.W. (2d) 1074, 1078; Railroad Comm. v. Shupee, supra; Mayor of Houston v. Houston City St. R. Co., 83 Tex. 548, 19 S.W. 127, 29 Am. St.Rep. 679; section 5, art. 10, Texas Constitution. And this is true where the use of the same highway is involved. In the instant case, however, the permit contested was over a distinct and separate highway serving in part at least a separate and distinct territory from that served by appellant, and one which the trial court found could not be served by appellant in operating over the southern route. * * *

"If, however, the service rendered over one route or highway is not adequate to meet the needs of adjacent territory which must be served over another highway, though between the same termini, it was a matter peculiarly within the realm of the commission's functions to determine whether such public convenience could be best met by an operator between said termini already in the field or by granting a permit to a competitor."

■ Nor do we sustain point "2" that the application made by Frank A. Blankenbeckler, trustee, for a certificate to be issued to a corporation to be formed did not meet the requirements of Art. 911b, Sec. 1(a) of the Motor Carrier Act, which provides that a certificate may be issued to "an individual, a firm, co-partnership, corporation, company, and association or a joint stock association." The sole question raised by this point, which is based upon appellants' assignment of error No. 5 and their proposition No. 4, is that one individual, acting for himself and two named associates, cannot make an application for a certificate to operate a common carrier service, the certificate to be issued to a corporation to be formed by them with a paid up capital stock of $10,000. The statute does not provide that the corporation be in existence at the time the application is heard, and in the instant case both the application and the order granting the certificate were conditioned that the certificate would not issue until a certified copy of the charter of the corporation was filed with the Commission. It would seem useless to

form the corporation until it was assured that the certificate would be granted. The corporation without the certificate would be worthless. The evidence showed the ability of the proposed incorporators to incorporate, the respective amount of stock to be owned by each of them, the duties to be performed by the incorporators in rendering the proposed service, and the corporation was in fact chartered with a capital stock of $10,000 fully paid before the certificate was issued to it. Appellants make no attack upon the ability of the corporation with a capital stock of $10,000 fully paid to operate or perform the service authorized and required by the certificate. No authority is cited by appellants in support of their contention and none has been found by us which would sustain the contention.

■■ Nor do we sustain the contention made by point "3" that the application did not point out the inadequacies of existing service over the proposed route as required by Art. 911b, Sec. 10(4), which provides in substance that the application shall be accompanied by a map showing the lines of existing common carrier companies serving the same territory and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein the proposed service would meet the required needs.

The Commission requires that applications for certificates be made on a form prescribed by it, the portion pertinent here reading as follows: "If this application covers all or a portion of a territory in which there is already a common carrier in operation, point out in detail the inadequacies of existing transportation facilities."

The application in the instant case met this requirement by attaching "Exhibit D" which reads as follows:

"There is no direct service from San Antonio to Wichita Falls, nor points intermediate thereto along the routes to be served. Various points along U. S. Highway No. 281 intermediate to Wichita Falls and San Antonio have some character of service, but most of it is by circuitous routes and long hauls, although there is some direct service between Wichita Falls and Jacksboro as we understand, and there is also probably some direct service to San Antonio and perhaps as far north as Lampasas. Practically all points on this route are reached by interline shipments or by interchanges at division points on the lines of some of the carriers.

"Neither is there any direct service between Wichita Falls and Austin.

"There is no direct service between San Antonio and Wichita Falls, such service as now existing being rendered by carriers interlining shipments which move from San Antonio to Wichita Falls or via rail through Waco and either Fort Worth or Dallas, which is a longer and more circuitous route; such shipments must be interchanged between carriers either at Waco, Dallas or Fort Worth.

"Service along these routes and between all common termini and intermediate points is inadequate because of the requirements for the interlining of shipments, movements over longer routes and no direct service. Service along the routes proposed in this application would be considerably expedited by the granting of this application, both as between all common termini and still more especially as between many of the intermediate points.

"Applicant finds that there is a considerable flow of tonnage between all of the common termini and various intermediate routes applied for which is not adequately provided for, and applicant proposes to remedy this situation by rendering a daily service between all of the common termini and intermediate points using overnight service."

To the application was also attached a map showing the proposed routes of operations, which by amendments directed by the examiner prior to the hearing by him, also showed the routes of appellants' operations, all of whom appeared at the hearing and offered additional maps showing their routes and testimony of a large number of witnesses concerning their facilities, service and tonnage hauled. We regard the application and attached exhibits as showing the inadequacies of existing transportation facilities and service in that they did not render daily overnight service between all of the terminal cities and intermediate points, which applicant proposed to remedy by giving such service; and especially is the application sufficient under the settled rule that strict rules of pleadings are not required in proceedings before the Commission for a certificate of convenience and necessity to operate motor carrier service. G. & H. Motor Freight Lines v. Railroad Commission, Tex.Civ.

App., 140 S.W.2d 946, error dismissed, correct judgment, and cases therein cited.

■ Nor do we sustain the contention made by the. last part of point "4", based on Supplemental Assignment of Error No. 1, which complains that "the Commission failed to file along with its order granting the certificate, findings of fact as required by Sec. 12(a) of Article 911b." The assignment is so general in its nature that we doubt if it points to any specific error, but in any event the above quoted findings of fact of the Commission meet the requirements of the statute, which provides that in granting or refusing a contested application for a certificate, "the Commission shall along with its orders file a concise written opinion setting forth the facts and grounds for its action." The findings of fact quoted do not detail the testimony nor evidence, but sufficiently find the ultimate facts upon which the order or action is based, as pointed out in our above summarized statement of the facts proved.

We find no error in the judgment of the trial court and it is affirmed.

Affirmed.